| 40 | 131 |
|---|---|
| 141 | 287 |
| 40 | 131 |
| 165 | 353 |
| 40 | 131 |
| 70a | 209 |
| 40 | 131 |
| 83a | 137 |
| 40 | 131 |
| 100a | 3236 |
| 40 | 131 |
| 103a | 3405 |

### ERASMUS WOODWORTH *et al.*

*v.*

### JAMES H. HUNTOON *et al.*

1. ASSIGNEE BEFORE MATURITY—*presumption in his favor.* Where a promissory note is assigned before its maturity, it will be presumed the assignee received it in the due course of business, and without notice of any defense thereto.

2. SAME—*burden of proof.* So where the maker of a note which is assigned before maturity alleges notice to the assignee that the note was usurious, it devolves upon him to prove the fact of notice.

3. REMOTE ASSIGNEE AFTER MATURITY—*protected through a prior innocent holder.* Where a note given upon an usurious consideration has been assigned before maturity, and without notice, the assignee will be protected against any defense arising therefrom, and a subsequent purchaser of the note from him, after its maturity, will succeed to his rights in the same condition he held them. A defense to the instrument having been cut off by its transfer to the prior innocent holder, cannot be revived by a subsequent assignment.

4. Usury — *when it may be recovered back, in equity.* Where a note given upon an usurious consideration has been assigned before maturity, to a *bona fide* purchaser, without notice, the defense of usury cannot be interposed; but when the usurious portion of the note is collected by the assignee under such circumstances, the payment by the maker will be regarded as compulsory and not voluntary, and he may recover it back from the original payee by a suit in chancery; and it may be that the maker has his remedy at law for money paid.

5. In those cases where it has been held that usury which has been paid cannot be recovered back, the court proceeded upon the ground, that a debtor who has voluntarily paid usury, is, after the whole debt is paid, estopped from recovering it back.

6. Admission in an answer in chancery—*what constitutes.* To a bill in chancery to enjoin the collection of a note which had been assigned before maturity, upon the ground that it contained usury, alleging notice thereof to the assignee, the payee answered that the assignee " was a *bona fide* holder and owner thereof, and had no notice of usury or any other defense to said note." It was *held*, that the answer was obnoxious to an exception for failing to answer the allegation of usury, in the bill; but no exception was taken, and it might, perhaps, as evidence, be regarded as an admission by the payee that the notice did contain usury.

7. Affidavit—*under the act of 1861, allowing one party to call the other as a witness.* Where it appears that one party to a suit was called by the opposite party to testify, as provided in the act of 1861, and no affidavit appears in the record, as required by the act, it will be presumed the affidavit was waived, unless the contrary appears.

8. Witnesses—parties in chancery—*whether a decree can be taken against a party who has testified at the instance of his adversary—construction of the act of 1861.* Under the general chancery practice, prior to the act of 1861, which provides that, upon proper affidavit, either party to a suit may call the other to testify, there were cases and circumstances which precluded a decree being taken against a party who had been called by his adversary to testify in the cause; and there were other cases in which the evidence of the party has been stricken out by the court, when there was other evidence, and a decree allowed to pass.

9. But since the act of 1861, the fact that a party in chancery has been called upon to testify by his adversary, does not affect the right to take a decree against the party testifying, in any case which is embraced in the provisions of that act.

10. Where the payee of a note containing usury, assigns the same before maturity to a party without notice, and thereby cuts off the defense of usury by the maker, there is an implied promise by the former to repay the usury to the latter, and a suit in chancery, brought upon such implied promise, is embraced in the spirit of the act of 1861, allowing one party to call upon the opposite party to testify.

11. ALLEGATIONS AND DECREE—*must correspond.* A bill filed in such a case, alleging notice of the usurious consideration of the note to the assignee, and seeking to enjoin its collection on that ground, will not authorize a decree against the payee upon the ground that he had assigned the note before maturity to a party without notice, and had thereby cut off the defense of usury, because the proof to authorize such a decree would not sustain the allegations in the bill.

APPEAL from the Circuit Court of Kendall county; the Hon. MADISON E. HOLLISTER, Judge, presiding.

This was a suit in chancery commenced in the Circuit Court of Kane county, by Erasmus Woodworth and Alvin Woodworth against James Harvey Huntoon, Edward D. Huntoon, Mary P. Huntoon and Josiah Stevens. The cause was afterward removed into the Circuit Court of Kendall county, upon change of venue.

It is alleged in the bill that on the 18th day of May, 1857, the complainants borrowed from James Harvey Huntoon the sum of twenty-five hundred dollars for the period of two years, agreeing to pay interest thereon at the rate of twenty-four per cent. per annum, and that on the same day they executed to the said James their promissory note for the sum of thirty-seven hundred dollars, payable two years from date, with interest at ten per cent. after due; the amount for which the note was given embracing the principal sum of twenty-five hundred dollars loaned, and the interest thereon for two years at twenty-four per cent. per annum.

That to secure the payment of said note, the complainants, at the same time, executed and delivered to Edward D. Huntoon a deed of trust upon certain real estate in Kane county.

It is further alleged that sometime in the year 1859, and prior to the maturity of said note, the said James H. Huntoon, the payee thereof, for the purpose of depriving the complainants of any defense to the same by reason of such usury, assigned and transferred the note to one Mary P. Huntoon, or pretended so to do; the possession, custody and control of said note still remaining with said James; and that to all intents and purposes it was the note of said James. That at the time

of making said assignment the said Mary P. Huntoon well knew that the purpose thereof was colorable merely, and made with the fraudulent intent aforesaid.

That on the 29th of June, 1859, the note being then due and unpaid, the said Mary P. Huntoon and James H. Huntoon sold, assigned, and transferred the same to one Josiah Stevens, of the State of New Hampshire.

The complainants insist that, by reason of the merely colorable and fraudulent character of the assignment to Mary P. Huntoon, and her knowledge thereof at the time she took the assignment, and the further fact that the note was not assigned to Stevens until after it was due, they may make the same defense thereto in his hands that they could if it had remained in the hands of James H. Huntoon, the original payee.

It is then alleged in the bill that, on the 29th of June, 1859, the complainants paid to the said Huntoons, on said note, the sum of six hundred and seventy-eight and $\frac{75}{100}$ dollars, which was indorsed thereon. That, on the 2d day of March, 1861, they tendered to one S. W. Brown, as the authorized agent of said Stevens, the further sum of $2,360 in gold coin, which was the balance then due upon said note, computing the interest on the sum loaned at the legal rate, but the said Brown refused to receive the same. And the complainants offer to bring into court the sum so tendered whenever directed so to do, or any other sum which the court might find to be properly due.

The complainants allege that said Stevens refuses to make any deduction or allowance on account of the usury contained in said note. And they charge that they have a direct and substantial interest in procuring said note, and the indebtedness thereby represented, to be canceled, so far as the same ought in equity to be done, for the reason that, while the legal title to the real estate mentioned in said deed of trust had passed from them, yet, on the 1st day of June, 1858, the said real estate still being subject to said incumbrance, they gave a deed of trust upon the same property to one Charles Patton, with a covenant against incumbrances, which covenant remains in full force.

It is further alleged that the complainants have never litigated the said question of usury contained in said note, and that said Stevens threatens to collect the whole amount thereof, and to sell said premises for that purpose, the said Edward D. Huntoon having actually given notice under his deed of trust that he will make sale thereof.

They pray that the defendants may answer without oath; that an account may be taken of the amount equitably due on said note, and the same being paid as the court shall direct, that the note, and the trust-deed given to secure the same, be canceled and discharged of record; and that the defendants, their agents, etc., be enjoined from selling or disposing of said note and trust-deed, or from making any sale by virtue of tho power in said deed given of the real estate therein described, or doing any act prejudicial to the complainants in the premises; and that, on a final hearing, such injunction be made perpetual, concluding with a prayer for general relief.

An injunction was awarded according to the prayer in the bill.

The answer of James H. Huntoon, in reference to the character and purpose of the assignment to Mary P. Huntoon, says: "long before the said note became due he sold and assigned, indorsed and delivered, the said note to Mary P. Huntoon, *bona fide*, and for a valuable consideration that was paid by the said Mary P. Huntoon, to wit, the amount of principal and interest then due upon said note, and that neither the custody nor control or possession of said note remained with this defendant after said transfer, but that the said note remained in the custody and control of Mary P. Huntoon, and that she was the *bona fide* holder and owner thereof, and had no notice of usury or any other defense to said note, and this defendant had no interest in the same whatever after said sale, and that said sale was not colorable or fraudulent, nor made for the purpose of depriving the said complainants of any defense whatever."

The other defendants also answered, denying, substantially, the alleged grounds of relief set forth in the bill. Replications

were filed, and the cause came on for hearing upon the pleadings and proofs, and a decree was entered at the October Term, 1863, finding that Mary P. Huntoon was the *bona fide* purchaser for a valuable consideration of the said note, before the same became due, and had no notice of the usury in said note, as is alleged in said bill, and that she was the *bona fide* owner and holder of said note at the time she transferred it to the defendant Stevens. The decree further finds, that Alvin Woodworth and Erasmus Woodworth were partners in all these transactions, and that the said Alvin represented to the agent of Stevens, at the time of his purchase of the note from Mary P. Huntoon, that the same was all right and would be paid, and thereby induced said agent to purchase the same for Stevens, his principal. It was therefore decreed that the injunction be dissolved and the bill dismissed.

The complainants thereupon took this appeal.

The questions presented by the assignment of errors, are, *first*, whether Mary P. Huntoon had notice of the usury alleged in the note, at the time she took the assignment thereof; and, if not, what position her assignee, Stevens, occupied with reference to that defense. *Second*, whether the maker of a note given, in part, upon an usurious consideration, can recover back the usury in equity when his defense to the note, at law, has been cut off by an assignment thereof before maturity, to a *bona fide* holder.

Mr. B. F. PARKS and Messrs. LELAND & BLANCHARD, for the appellants.

Messrs. WHEATON & BROWN, for the appellees.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

A careful examination of all the evidence in this record fails to show that Stevens was not a *bona fide* purchaser of the note without notice of the defense of usury. Brown, who made the purchase as his agent, testifies, that he had no knowledge

that the note was tainted with usury. He also testifies that appellant, Alvin Woodworth, solicited him to purchase the note, and assured him it was all right. But the instrument being negotiable and past due, he took it precisely as it was held by his assignor. If Mary P. Huntoon held it free from the defense of usury, he by his purchase succeeded to her rights. A note, tainted with fraud or other infirmity, passing into the hands of an innocent purchaser, not chargeable with notice, and for a valuable consideration, he acquires it purged of the defense, and any other person acquiring it of him succeeds to his rights in the same condition he held them. A defense to the instrument in the hands of the original holder, having been thus cut off, is not revived by the note being again transferred.

The assignment of this note to Mary P. Huntoon was before its maturity. This raises the presumption, until it is rebutted, that she received it without notice, and in the due course of business. It then devolves upon the party contesting the good faith of the transaction to show, that she had notice of the usury, or of such circumstances as would lead to notice, at the time she purchased.

In this we think the evidence fails. It is denied by the answers of the payees. The principal circumstances relied upon to prove notice is that she is sister of one of the payees. This of itself is not sufficient to impeach the transaction. Persons occupying that relation may and frequently do sell to, and buy property of, each other on precisely the same terms as they do of strangers. This fact, in connection with other circumstances, may be taken into consideration to determine whether the transaction was real or only colorable. There is nothing to show that she was not possessed of ample means to enable her to purchase notes, and if disposed to do so, it is natural that she should as readily purchase of a brother as of a stranger.

The usury is admitted by the payee, in his answer, and inasmuch as it can not be interposed as a defense to or relied upon for a decree against that amount of the note, can a decree be rendered against the payee for the usury? Had he continued

to hold the note, there can be no doubt that the amount of the usury reserved might be deducted and a decree rendered for the balance. He has, by the sale of the note, prevented the defense to the note, has obtained money which, in equity and good conscience, he has no right to retain, and which the law forbids him to receive. It is true that he has not received it from the makers, but from third persons. It was not paid by the makers, and its payment by a third person does not estop them from insisting upon having it refunded. He has received this amount which was not owing him under the law, and has compelled the makers to pay that sum to the present holder. Suppose the note had been free from taint of usury and the makers had paid this sum, and it had not been credited, and the note sold before maturity, would any one doubt his liability to the makers? And, in principle, the two cases are the same, one is equally a defense as the other, and in each it would be the wrongful act of the payee which deprives the makers of their defense to the note. Courts of equity will, as a part of their inherent jurisdiction, lend their aid to recover back usury paid by the borrower, beyond legal interest. Story's Equity, § 302. It is said, in Fonblanque's Equity, vol. 1, 245, that, "in usurious contracts, there is no doubt but equity will give relief to the borrower in case where the law will not reach him, as it is unjust for the lender to hold such exorbitant gains, and the borrower can never be considered *particeps criminis,* but rather deserving compassion than punishment." Before equity adopted this rule it had been held by the English courts of law that usury actually paid could not be recovered back by the borrower. *Tompkins* v. *Bernett,* 1 Salk. 22. And it seems that equity assumed jurisdiction because the borrower had no adequate remedy at law. But in more modern times, the ancient rule of the common law courts has been relaxed and it may now be recovered in the English courts by an action for money had and received. *Browning* v. *Morris,* Cowper, 792 ; *Jaques* v. *Galightly,* 2 Blk. 1073 ; *Astley* v. *Reynolds,* Strange, 915.

On the one hand, courts of equity will not relieve the debtor by declaring the contract void, and thus aid him in perpetrat-

ing a fraud, but will require him to do equity by paying the principal with legal interest; on the other, it will not aid the usurer in perpetrating a fraud, by enforcing his illegal and unconscionable bargain. But to prevent fraud it will decree the repayment of the usury received from the debtor, and only permit the creditor to have his money with legal interest. It will not lend itself to aid either party in committing a fraud, but will require both parties to do equity; even if a court of equity would not entertain a bill for the recovery of usury already paid, it will interpose to prevent its collection, or to compel an assignor to pay the usury to the makers of the note where the assignment has cut off the defense. It will prevent such fraud. In this case Huntoon should not be permitted, by transferring the note before its maturity to an innocent holder, to consummate his fraudulent purposes, and thus acquire and hold money which the law has said he shall not have. The payment of the usury by Mary P. Huntoon, when she purchased the note, may be treated as money paid for the use of the makers. And in this case equity will require him to pay the usury over and above legal interest to the makers of the note. This relief may be granted under the general prayer, not being inconsistent with the special prayer for relief.

The court below should have rendered such a decree. The decree which was rendered being erroneous, it must be reversed and the cause remanded.

BREESE, Justice, dissents.

This cause was originally argued at the April Term, 1864, and the foregoing opinion was filed as of that term. At the April Term, 1865, a rehearing was granted upon the suggestion of questions which were not presented to the court at the former hearing.

On the rehearing, it was insisted by Mr. L. R. WAGNER, on behalf of the appellee, James H. Huntoon, with whom was Mr. S. W. BROWN, that to enter a decree requiring James Harvey Huntoon to pay to the Woodworths the usury in this note and deed of trust, would be clearly inconsistent with the case

made by complainants' bill, and if so would be erroneous. Citing *Colton* v. *Ross*, 2 Paige Ch. 397; *Lloyd* v. *Brewster et al.*, 4 id. 537; *Beebe* v. *Bank of New York*, 1 Johns. 559; Mitford's Pleadings, 38; *Wilkin* v. *Wilkin*, 1 Johns. Ch. 117; *Grimes* v. *French*, 2 Atk. 142; *Darmer* v. *Fortescue*, 3 id. 132; 2 Peters, 595.

Counsel further urged:

The complainants examined James Harvey Huntoon as a witness in the cause, and this operates as an equitable release to the defendant, and there can be no relief against him, and cited 3 Greenleaf's Evidence, § 316; *Wrymouth* v. *Boyer*, 1 Vesey, 417; *Lewis* v. *Owen*, 1 Ired. Eq. 93; *Palmer* v. *Van Dorn*, 2 Edw. Ch. 193; *Bradley* v. *Root*, 5 Paige, 633; *Lingan* v. *Henderson*, 1 Bland, 263.

The statement, in the opinion in this case, that Huntoon admitted the usury in his answer, is a mistake. Huntoon neither admits nor denies it in his answer, but testified to it when called as a witness by complainant.

Mr. B. F. PARKS and Messrs. LELAND & BLANCHARD, for the appellants, *contra.*

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This case comes before us at this term on a rehearing. After careful reflection and reconsideration of the ground upon which the former opinion was based, we see no reason to change our views as there expressed. But upon questions now raised which were not then considered, we have arrived at a different conclusion from that announced on the former hearing.

In granting relief against usury collected, as the record shows it was in this case, we would not in the least modify the former decisions of this court, but place it upon the ground that the payment was not voluntary, but was compulsory and so that the defense could not be made. In the former cases the court proceeds upon the ground that a debtor who has voluntarily paid usury is, after the whole debt is paid, estopped from suing and recovering it back. While in a case like this it is

involuntary, and by the transfer of the note before its maturity to a *bona fide* purchaser without notice, the defense is cut off. Nor can a debtor in such a case resort to a court of equity for relief by injunction of the usurious portion of the debt, as by the assignment before maturity the assignee acquires the note freed from all defense, either legal or equitable. As the payment is compulsory, and by the assignment of the note the payee has, to say the least, obtained an unfair advantage, a court of equity will give relief, and it may be that the maker has a remedy at law for money paid for the use of the payee.

It is now urged, that it appears from the evidence, that complainants had made an assignment of their property for the benefit of creditors, and if so, they have no right to recover the usury back, but that the assignees would be entitled to recover. It is true, that Wagner incidentally states in his testimony that they had made an assignment and were insolvent. To whom, when, or what was assigned, he does not state. The record affords no evidence, if an assignment was made, that it embraced this claim. This evidence is too meagre and unsatisfactory upon which to reject the claim to recover back the usury.

It is insisted that James H. Huntoon does not admit that the note contained usury, and that it was not otherwise proved. He does not in terms admit it, but clearly does by implication. The bill charges that the transaction was usurious, and in his answer he says, that Mary P. Huntoon " was a *bona fide* holder and owner thereof, and had no notice of usury or any other defense to said note." The answer was obnoxious to an exception for failing to answer the allegation in the bill, but no exception was taken to it. It might perhaps, as evidence, have been regarded as such an admission as would warrant the conclusion that the note did contain usury, as charged in the bill.

It is likewise insisted at this time, that James H. Huntoon, being called by complainants as a witness on the hearing, they are precluded from taking a decree against him. Under the general chancery practice, there are cases and circumstances that preclude such a decree, but there are other cases where

the courts have stricken out the evidence of the party, when there was other evidence, and permitted a decree to pass. And if necessary in this case to the support of the decree, we would incline to hold that Huntoon's evidence might be stricken out, and a decree rendered on his answer. But by a recent statute, adopted on the 20th day of February, 1861 (Sess. Laws, 71), it is provided that after making and filing an affidavit, either party may call on the other to testify. It declares that in cases where there are two or more plaintiffs or defendants, the opposite party may call either or all of the plaintiffs or defendants as witnesses to the fact mentioned in the affidavit. We find no affidavit in the record, but we will presume that it was waived unless the contrary appears. This statute, it is true, declares that whenever a party to any original suit pending in a court of record, upon contracts express or implied, shall file an affidavit, he may resort to this character of evidence. While a bill in equity may not be embraced, in terms, in the act, such a case as this is clearly within its spirit, as there is an implied promise by the payee, when he sells a note and cuts off the defense of usury, that he will repay the usury to the maker.

However, upon a careful examination of the bill, we find, that, as it is framed, the relief cannot be granted. If properly framed in other respects, the relief could have been granted under the general prayer. But the bill proceeds upon the ground that the purchasers of the note had notice of the usury and were not *bona fide* holders — Mary P. Huntoon being charged with notice — and that Stephens purchased after the maturity of the note. The evidence fails to sustain these allegations, but the evidence does show that James H. Huntoon did sell the note so as to cut off the defense of usury. The bill makes one case and the proof another. Had the bill been properly framed the relief should have been allowed. But we feel ourselves unable to reverse the decree of the court below, but it is so modified that the bill stand dismissed without prejudice, and appellant pay the costs of this court.

*Decree modified.*