### Frank K. Pearce v. William I. Martin.

1. MASTER IN CHANCERY—*effect given to conclusions of.* Except in involved matters of account, the master's conclusions of fact are only *prima facie* correct.

2. USURY—*when repayment of, will be decreed in equity.* One who has received the benefit of usury will be compelled to account therefor in a court of equity notwithstanding he may have trans-

ferred to a third party the instruments under which the usury was paid.

3. VARIANCE—*when will not reverse.* A variance with respect to an immaterial allegation is not ground for reversal.

Bill in equity. Appeal from the Circuit Court of Douglas county; the Hon. SOLON PHILBRICK, Judge, presiding. Heard in this court at the May term, 1906. Affirmed. Opinion filed November 27, 1906. Rehearing denied January 8, 1907.

ECKHART & MOORE, for appellant.

R. F. HALL, for appellee.

MR. PRESIDING JUSTICE RAMSAY delivered the opinion of the court.

William I. Martin filed his bill in equity against one William W. Reeves in which Martin, charged that certain loans made to him (Martin) by Frank K. Pearce, acting as agent for Reeves, were made at usurious rates of interest. In his bill Martin asked for an accounting to determine the amount of his indebtedness and offered to pay the amount so found due. Afterward Martin filed an amendment to his bill which charged that said Reeves and Pearce had colluded and confederated against Martin and that a note of Martin's in renewal of previous small loans was taken by Pearce in the name of Reeves; that he, Martin, supposed when he signed such renewal note that he was signing a note to Pearce and the fact that Reeves was the payee in the note was then unknown to him; that Reeves was really acting for Pearce in the taking of usury. In this amendment an accounting was asked as against both Reeves and Pearce as to the amount of usury taken. A further amendment to the bill was filed, during the hearing of the case, in which it was charged that Pearce loaned to Martin the money he, Martin, had received; that he had received none from Reeves and had had no dealings with Reeves and that the taking of said note in the name of Reeves was a

shift and device on the part of Pearce to place the papers in the name of some one besides Pearce, so Martin could not plead usury.

The evidence was taken before the master in chancery who reported the same, with his conclusions, to the court. The master's findings were all against Martin, who filed exceptions thereto, which were heard and sustained by the court as to Pearce. A decree was rendered in favor of Reeves and the bill dismissed as to him, but as to Pearce the court found that there was usury involved in the transactions between him and Martin, stated the account between them and rendered a decree against Pearce in the sum of $219.57, from which Pearce has appealed.

It appears from the evidence that Pearce was a loaner of money upon chattel mortgage security at Tuscola, Illinois, and that Martin, who was a farmer living near that place, was a borrower from him; that appellee, between March 11, 1904, and May 1, 1904, made several small loans from appellant, all of which became due about June 2, 1904, when appellee made a new note in the sum of $1,198, which was an adjustment of all the loans previously made, which said note was made payable to said W. W. Reeves, who, at the time of the trial, owned and held the same. Appellee claims that he understood at the time of the making of the note for $1,198 that it was payable to appellant the same as the notes previously made. The chattel mortgage securing the note was also made to said Reeves as mortgagee.

The testimony of the parties to the transactions was in direct conflict upon many matters involved, but that there was an agreement upon the part of appellee, to pay more than lawful interest upon every loan negotiated with appellant, admits of no doubt. Upon making a loan of $280 to appellee, appellant took appellee's note for $297, due in less than three months, to draw interest from date at seven per cent. In other words,

appellant added $17 to the amount loaned, which added sum he called ''costs and charges.'' Upon a loan of $100 running a little over two months he added $7 of the same character, and upon another loan in the sum of $150 due in about forty days he added $9.50, while the renewal note made on June 2, 1904, for $1,198 payable to Reeves, included at least $60 in excess of the amount due.

Appellee claimed that these payments or agreements to pay in excess of the lawful rate of interest were usurious, while appellant insisted that said added sums were paid him for costs, expenses and charges in addition to interest. These added amounts the trial court held to be usury and so decreed, and we are not disposed to disturb such holding. The interest upon every loan made by appellant to appellee, treating these added amounts as interest, was uniformly about forty per cent. per annum, and was so grossly inequitable and so unsatisfactorily explained by appellant, that no holding could have been made by the chancellor other than that of usury.

Appellant contends that the master's findings on conflicting oral testimony must have the same weight with the court as a verdict of a jury and that the court erred in holding to the contrary. The rule upon that subject is that, except in involved matters of account, the master's conclusions of fact are only *prima facie* correct, and that the court may modify or reject the report. Ennesser v. Hudek, 169 Ill. 494. In the case just cited the court quote with approval from the case of Boston v. Nichols, 47 Ill. 353, to the effect that: ''It is not the province of the master to adjudge and finally determine upon the rights of the parties. That belongs to the chancellor and he cannot delegate it to another. The master is a ministerial and not a judicial officer.''

We do not think, therefore, the court committed any error in holding that there was usury involved, not-

withstanding the holdings of the master to the contrary.

It is further contended by appellant that in the settlement made between him and appellee on the second day of June, 1904, the adjustment made amounted to a voluntary payment by appellee and therefore he was not entitled to a decree for its return or repayment. Many authorities were cited which support the claim that where usury has once been voluntarily paid by the borrower and his note or obligation surrendered, he cannot recover back such payment; but in the case at bar we do not think the chancellor was in error in holding that the loan had not been voluntarily paid. There was testimony before him to show that the note of June 2, 1904, was a mere renewal of the loans previously made; that the face of that note represented the total of what appellant then claimed to be his due for money loaned, costs, commissions and expenses, and that all of the notes relating to previous loans were then canceled by appellant, while appellee supposed at the time of the making of the new note that it ran to appellant as the other notes did.

Appellant, by his act, put the loan in the hands of an innocent party, and by that act deprived the borrower of the right to interpose the defense of usury to any suit upon such note. By that means he obtained money wrongfully, which he had no right to retain, from appellee. Such circumstances do not amount to a voluntary payment and equity will decree repayment of the usury. Woodworth v. Huntoon, 40 Ill. 131.

Appellant next argues that there is a variance between the allegations in the bill (and its amendments) and the proof in the case, and that in consequence of such variance appellee's bill should have been dismissed. In his brief appellant says that: "A party will not be permitted to state his case one way in the bill of complaint, and recover upon another and mate-

rially different case made by the proof.'' The variance complained of in the case at bar did not relate to material matters but related to matters of an immaterial character, such as a failure to describe the different notes in detail, that made up the sum total of $1,198, although the note last described covered all the loans between the parties up to the time it was made (and was in fact a renewal of the previous loans) and embraced all the usury alleged to have been charged. The allegations in appellee's bill and its amendments seem to have fully and fairly apprised appellant of the claim of usury, also that appellee claimed that the changing of the papers when the last note and mortgage were made was a shift and device on the part of said Pearce to place the title to said papers in the name of Reeves so that appellee could not plead usury against the same.

There was no error in the holding of the court upon this feature of the case.

The trial court, by its decree, found that there was due from appellant to appellee the sum of $219.57, and while there may be some doubt whether or not an item of $100, which appellee claims to have repaid to appellant, should have been allowed, we are not disposed to reverse the case upon that point. The holding of the court as to that point was not unwarranted.

The decree was right and is affirmed.

*Affirmed.*