## A. J. KEENAN et al. Appellees, vs. WILLIAM BLUE et al. Appellants.

*Opinion filed April 23, 1909.—Rehearing denied June 3, 1909.*

1. BILLS AND NOTES—*secret restrictions as to use of accommo-dation paper are no defense.* Restrictions upon the use of accommodation paper are no defense to the note in the hands of a purchaser for value, where the restrictions do not appear upon the note and were not brought to the notice of the purchaser before he acquired the note.

2. SAME—*rule relating to fraudulent representations applies to accommodation paper.* Fraudulent representations not going to the execution of an accommodation note but only to the reasons which prompted the maker to lend his credit are no defense to the note in the hands of a purchaser for value before maturity unless he had notice of the fraudulent representations before he purchased.

3. SAME—*stipulation for attorney's fee in warrant of attorney is proper.* A stipulation for a specified attorney's fee in the warrant of attorney contained in a judgment note is a proper provision, and the right to enforce such agreement passes by assignment to the purchaser of the note for value and before maturity, in the usual course of business.

4. SAME—*endorsement of payee's name on back of a negotiable note transfers title.* The endorsement of the payee's name on the back of a negotiable note is sufficient to transfer title, even though it is preceded by words purporting to assign "his right, title and interest" in the note.

5. SAME—*effect where endorsement is to a fictitious person "or bearer."* Where an endorsement signed by the payee of a negotiable note is to a fictitious person "or bearer," the fictitious name may be stricken out and suit may be maintained on the note without the endorsement of such name; and this is true whether the payee knew or did not know his endorsee was a fictitious person.

6. EVIDENCE—*when circumstances surrounding execution of a note cannot be shown.* In an action brought against the makers of a note by the legatees of the purchaser the defendants are not competent to testify to the facts surrounding the execution of the note, nor can such facts be shown on cross-examination of a witness for the plaintiffs who negotiated the sale, where there is no evidence that he acted as agent for such purchaser and where he did not testify to such facts on direct examination.

DUNN, J., dissenting.

240—12

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding.

On the 21st day of October, 1905, the appellees, A. J. Keenan and L. C. Keenan, doing business under the name of J. Keenan's Bank, caused to be entered by confession, in the circuit court of McLean county, against the appellants, William Blue and James Vance, and one D. L. Buckworth, a judgment for $4573.44 upon a promissory note for $4000, bearing date March 8, 1905, signed by D. L. Buckworth, William Blue and James Vance, and payable two years after date to D. L. Buckworth or order, with interest at seven per cent per annum from date until paid, which note had attached thereto a warrant of attorney authorizing Owen & Owen, or any attorney at law, to confess judgment on the note in favor of the legal holder for the amount thereof and costs and $400 attorney's fees, which note bore on its back the following endorsement: "For value received I hereby assign all right, interest or title in the within note to I. N. Porter or bearer.—March 14, 1905.—D. L. Buckworth." After the entry of the judgment the appellants appeared and moved to vacate the judgment and to recall the execution which had been issued, which motion was overruled, and an appeal was prosecuted to the Appellate Court for the Third District, where the judgment was reversed and the cause was remanded to the circuit court. (130 Ill. App. 312.) Upon the case being re-docketed in the trial court an order was entered opening the judgment, staying execution and granting the appellants leave to plead. A demurrer was thereupon interposed to the declaration and sustained, and the appellees, by leave of court, amended their declaration and averred therein that D. L. Buckworth, on March 14, 1905, assigned the said note for a valuable consideration, by his endorse-

ment thereon, to one I. N. Porter or bearer, the said I. N. Porter being then and there a fictitious person, and that appellees were the bearers and legal holders of said note. The appellants again demurred to the declaration, and their demurrer being overruled they filed seven pleas to the declaration. The first, second and third pleas were sworn to. The first denied the assignment for value by endorsement and delivery. The second denied that the note was endorsed or delivered to appellees for value, and the third denied that I. N. Porter was a fictitious person and was known by Buckworth to be a fictitious person. The fourth, fifth and sixth pleas averred the said note was without consideration and was signed by the appellants as accommodation paper, and that they executed said note by reason of certain false and fraudulent representations made to them as to the financial standing of said D. L. Buckworth, and that to induce them to sign said note said D. L. Buckworth executed and delivered to them his note for $4000 of even date with said judgment note; that said Buckworth had been adjudged a bankrupt, and that they had filed said collateral note against his estate, upon which they had received a dividend of $906.34, which sum they brought into court and offered to pay over to appellees if they should be adjudged to be the owners of the said judgment note. The seventh plea averred that the attorney's fees incorporated in said judgment note and warrant of attorney made the transaction between the appellants and appellees usurious. The appellees joined issue upon the first, second, third and seventh pleas and filed two replications to the fourth, fifth and sixth pleas, in the first of which they denied that J. Keenan had any notice of the facts averred in said pleas, and the second replication pleaded an estoppel upon the appellants growing out of the presentation of said collateral note by them against the estate of D. L. Buckworth. The court sustained a demurrer to the second replication, and upon the trial, at the close of all the evidence, instructed

the jury to find the issues in favor of the appellees, and after overruling a motion for a new trial rendered judgment on the verdict, holding "the judgment entered herein on the 21st day of October, 1905, in favor of the plaintiffs and against the defendants, for $4573.44, stand in full force and effect as of the time of its rendition," which judgment included the sum of $400 for attorney's fees, as provided in said note and warrant of attorney, and said judgment having been affirmed on appeal to the Appellate Court for the Third District, a further appeal has been prosecuted to this court.

On the trial two witnesses, namely, Wesley M. Owen and A. J. Keenan, were called on behalf of appellees and testified upon the trial. Wesley M. Owen testified, in substance, as follows: That he was a member of the firm of Owen & Owen, and that at the time of the note transaction his firm had for collection several claims against Buckworth, amounting to $700 or $800, among which was one in favor of his half-brother, Thomas Owen, for $400; that Buckworth applied to his firm, as brokers, to negotiate a sale of the note; that he went to J. Keenan's Bank and talked with the appellee A. J. Keenan, cashier, and asked him if the bank would buy the note; that Keenan said they would if the bank's note against Buckworth of $1750 was taken out and if it could be arranged so that Buckworth would not know the bank was getting the note; that Keenan suggested making the assignment to I. N. Porter or bearer; that he told Keenan he would see what could be done about it, and went back and told Buckworth his firm could dispose of the note if Buckworth would pay them $80 commission and assign the note to I. N. Porter or bearer, and permit Owen & Owen to deduct from the proceeds the amount of the claims held by them and an additional claim of $1750; that Buckworth said "Very well," and he (witness) wrote the assignment on the back of the note and read it to Buckworth, who asked, in substance,

if Porter lived "near or around here," but that he did not answer the question; that Buckworth executed the assignment without knowing that Porter was, in fact, a fictitious person; that he took the note to Keenan, the cashier, who deducted the amount of the note for $1750 held by the bank against Buckworth and credited the account of Owen & Owen with the balance of the $4000; that he deducted $75 for his firm's services and the amount of the claims held by them against Buckworth, including the $400 claim of their half-brother, Thomas Owen, and paid over the balance, something like $1500, to Buckworth. A. J. Keenan testified, in substance, that at the time of the transfer of the note, his father, Joseph Keenan, owned and was operating the J. Keenan's Bank and that the transaction was had with him alone; that he was the only person connected with the bank who talked about it; that Joseph Keenan died testate on the 19th day of September, 1905, and the note was an asset of the bank. The appellees also offered in evidence the last will and testament of Joseph Keenan, by the first clause of which all the assets of the bank were given to appellees in equal shares, to vest in them absolutely and in fee simple on the date of the testator's death, and by the last clause of which appellees were appointed executors of the will. The last codicil to the will directed that out of the other assets of the estate appellees should pay to themselves the amount of any loss or depreciation in the notes held by the bank at the testator's death. The note was also introduced in evidence.

After the appellees had closed their testimony the appellants offered themselves as witnesses to establish the facts set up in their fourth, fifth and sixth pleas, but upon objection they were held incompetent as witnesses, and on the cross-examination of Wesley M. Owen appellants sought to show that at the time of the transfer of the note Wesley M. Owen had knowledge of its accommodation character, and that at the time it was signed certain restrictions

were placed upon its use by Buckworth, and that he knew that its execution had been obtained by false and fraudulent representations as to the financial standing of D. L. Buckworth. An objection was sustained to the cross-examination on the ground that it was not proper cross-examination.

T. C. KERRICK, BRACKEN, YOUNG & PEIRCE, and EARL D. RIDDLE, for appellants:

A good-faith purchaser of commercial paper is only protected against existing defenses to the extent of the consideration paid by him, with interest. Randolph on Com. Paper, (2d ed.) secs. 452, 994; *Dresser* v. *Construction Co.* 93 U. S. 92; *Pearce* v. *Rice,* 142 id. 28; *Holcomb* v. *Wyckoff,* 35 N. J. L. 35; *Perry* v. *Water Co.* 67 Hun, 456; *Bank* v. *Clayton,* 66 Vt. 541; *Vosburg* v. *Diefendorf,* 119 N. Y. 357; *Hubbard* v. *Chapin,* 84 Mass. 328; *Bank* v. *Weist,* 52 Iowa, 648; *Taylor* v. *Daniels,* 37 Ill. 331.

Evidence of illegality or fraud in the origin or transfer of negotiable paper destroys the presumption of good faith, and throws upon the holder the burden of proving that he paid value for the paper and took it before maturity in the usual course of business, and under circumstances which create no presumption that he knew the facts which impeach its validity. Randolph on Com. Paper, (2d ed.) sec. 1026, and cases cited; *Wright* v. *Brosseau,* 73 Ill. 381; *Hobson* v. *Glass Co.* 156 id. 397; *Bank* v. *Alexander,* 184 id. 416; *Trust Co.* v. *Brugger,* 196 id. 96; *Loan Co.* v. *Welter,* 205 id. 647.

Proof of the fraudulent diversion of accommodation paper leaves the burden with the holder to prove his good faith. *Nickerson* v. *Ruger,* 76 N. Y. 279; *Bank* v. *B. & P. Co.* 148 id. 698; *Union T. Co.* v. *McClellan,* 40 W. Va. 405; *Landauer* v. *Improvement Co.* 72 N. W. Rep. 467.

"Any such note, bond, bill, or other instrument in writing, made payable to any person named as payee therein, shall be assignable by endorsement thereon, under the hand

of such person and of his assignees, in the same manner as bills of exchange are, so as absolutely to transfer and vest the property thereof in each and every assignee successively." Rev. Stat. chap. 98, sec. 4.

The only assignment which will cut off the equities of the maker of the note is an endorsement made in conformity with the statute and passing the legal title. *Olds v. Cummings*, 31 Ill. 188; *Sturges v. Miller*, 80 id. 241; *Peck v. Bligh*, 37 id. 317; *Bouton v. Cameron*, 205 id. 50.

The assignment by the payee on the back of the note of "all right, interest or title" was not a commercial endorsement and did not cut off any defense of the makers. *Aniba v. Yeomans*, 39 Mich. 171; *Hatch v. Barrett*, 34 Kan. 233; *DeHass v. Roberts*, 59 Fed. Rep. 853; *Trust Co. v. Bank*, 101 U. S. 68; *Hailey v. Falconer*, 32 Ala. 536; *Lyons v. Divelbis*, 22 Pa. St. 186; *Spencer v. Halpern*, 62 Ark. 595.

Under the statute the legal title of a note payable to a person or bearer cannot be transferred by delivery without endorsement so as to give the holder or bearer the right to sue in his own name. *Gavin v. Wiswell*, 83 Ill. 215; *Hilborn v. Artus*, 3 Scam. 344; *Roose v. Crist*, 17 Ill. 450.

A negotiable instrument or endorsement made to a fictitious person cannot be treated as payable to bearer and negotiated without endorsement unless the person making it knew and actually intended to make the paper payable to a fictitious person. *Armstrong v. Bank*, 46 Ohio St. 512; *Shipman v. Bank*, 126 N. Y. 318; *Chism v. Bank*, 97 Tenn. 641; *Rogers v. Ware*, 2 Neb. 29.

The burden is on the holder to allege and prove that the payee or endorsee is such fictitious person. *Chenot v. Lefevre*, 3 Gilm. 637; 1 Randolph on Com. Paper, sec. 162.

The purchaser of a note through an agent is chargeable with notice of all equities of which the agent had knowledge at the time of the purchase. *Bryan v. Primm*, Breese, 59; *Whitney v. Burr*, 115 Ill. 289; *Farwell v. Telegraph Co.* 161 id. 522; *Fischer v. Touhy*, 186 id. 143.

The same rule applies where the agent represents both parties. *Miller* v. *Whelan,* 158 Ill. 544; *Boyd* v. *Yerkes,* 25 id. 527.

The right to cross-examine extends to all matters connected with and which are a part of the *res gestæ* of a transaction testified to in the examination in chief. 3 Ency. of Evidence, 832, 835; *Chandler* v. *Allison,* 10 Mich. 460; *Wilson* v. *Wagar,* 29 id. 459; *Lamprey* v. *Munch,* 21 Minn. 379; *Railway Co.* v. *Creech,* 207 Ill. 400.

Unless a suit is necessarily brought in a representative capacity the statute does not apply, and the defendant is a competent witness even though a party has described himself as such representative. *Roberts* v. *Pierce,* 79 Ill. 378.

When one sues as the representative of a deceased person, and an agent of the deceased in a transaction testifies to it, the defendants are rendered competent to testify to the same transaction by the second clause of section 2 of our statute on evidence. *Marshall* v. *Karl,* 60 Ill. 208.

WELTY, STERLING & WHITMORE, LESLIE J. OWEN, and BARRY & MORRISSEY, for appellees:

No particular form of words is necessary to constitute a valid assignment under the statute. *Simpson* v. *Ranlett,* 2 Gilm. 312.

The rule in this State has been that under sections 3 and 4 of the Negotiable Instruments act a note payable to A B or bearer must be endorsed by A B in order to pass the legal title. *Turner* v. *Railroad Co.* 95 Ill. 134.

The rule at common law or the law merchant is that the title to such a note passes by delivery. Randolph on Com. Paper, secs. 160, 654, 698, 1648.

Sections 3 and 4 of the Negotiable Instruments act of 1874 are repealed or modified by section 1 of the amendatory act of 1895, which provides that "the rights of the lawful holders of promissory notes payable in money, and the liability of all parties to or upon said notes, shall be the

same as that of like parties to inland bills of exchange according to the custom of merchants." 2 Starr & Curtis, p. 2796.

Notes and bills made payable to the order of a fictitious person, when not forbidden or restricted by statute, are treated as if made payable to bearer. 1 Randolph on Com. Paper, par. 161.

Our statute never has forbidden or restricted the use of fictitious names. A note payable to a fictitious person is, in effect, payable to bearer. 7 Cyc. 564; *Bloggetts* v. *Jackson*, 40 N. H. 21; *Foster* v. *Shallock*, 2 id. 496; *Kohn* v. *Watkins*, 26 Kan. 691; *Forbes* v. *Espey*, 21 Ohio St. 474; *Lane* v. *Krekle*, 22 Iowa, 399.

This is true even though the maker, at the time he executed it, had no knowledge that the name of the payee was fictitious. Joyce on Defenses to Com. Paper, par. 24.

A transferee of accommodation paper in good faith and for value, even after maturity and with notice that it is such paper, is entitled to recover, notwithstanding it has been diverted from its purpose, where there are no restrictions as to its use written into the paper and no notice of such restrictions brought to the knowledge of the transferee. *Miller* v. *Larned*, 103 Ill. 562; *Naef* v. *Potter*, 226 id. 628.

The beneficiary of an accommodation note may transfer it in payment of his indebtedness or as collateral security for a concurrent or even an antecedent debt. *Miller* v. *Larned*, 103 Ill. 562.

Want of consideration on the part of the makers is no defense to such paper. *Naef* v. *Potter*, 226 Ill. 628.

Mr. JUSTICE HAND delivered the opinion of the court:

It is first contended that as between the appellees and D. L. Buckworth there was no consideration for said note, it being accommodation paper, and that its execution was obtained by false representations as to the financial standing of D. L. Buckworth, and that as the father of appel-

lees only paid $4000 for the note, conceding he purchased the note in good faith but for the face of the note, the recovery in favor of appellees should have been limited to the face of the note and interest, and that the judgment is excessive as to the attorney's fees included in the judgment. The note was accommodation paper, and there are no restrictions as to its use written on the note and no proof of notice of any restrictions as to its use or any proof of fraudulent representations made to appellants at the time the note was signed. In *Naef* v. *Potter,* 226 Ill. 628, it was said that accommodation paper is always necessarily issued without consideration, and no recovery can ever be had thereon by the original payee against the accommodation maker; that while the accommodation maker can impose any restrictions upon the use of such paper that he may see fit at the time it is issued, still, unless such restrictions are written upon the paper or otherwise brought to the knowledge of the transferee for value before he has purchased the paper, such restrictions constitute no defense to the paper, and the same rule with reference to fraudulent representations which do not go to the execution of the paper but apply only to the reasons which prompted the maker to lend his credit must apply to accommodation paper which applies to other commercial paper, and unless knowledge of such fraudulent representations is brought home to the transferee before he purchases the paper he will take it as an innocent purchaser, free from the defense of fraud. In *Woodworth* v. *Huntoon,* 40 Ill. 131, this court, on page 137, said: "A note tainted with fraud or other infirmity, passing into the hands of an innocent purchaser not chargeable with notice and for a valuable consideration, he acquires it purged of the defense." In *Wightman* v. *Hart,* 37 Ill. 123, it was held when a promissory note has been assigned the presumption will be indulged that it was for value and *bona fide.* Persons questioning the fairness of the transaction, to defeat the assignment must prove

that it was not for value or that it was made for fraudulent purposes.

In this case the evidence shows the father of the appellees, from whom they obtained the note, purchased this note in the due course of business and for its full face value. Clearly, therefore, appellees, as legatees under their father's will, have the right to recover the full face value of the note, and as the note was not paid and a judgment was rightfully confessed thereon in accordance with the warrant of attorney attached thereto, the attorney's fee specified in the note and warrant of attorney was rightfully included in the judgment. In *Weigley* v. *Matson,* 125 Ill. 64, it was held a stipulation in a warrant of attorney for the confession of a judgment by which a debtor agrees to pay the fees of his creditor's attorney in case the creditor is compelled to resort to legal proceedings to collect his debt is an agreement which is not only eminently just but which rests upon a good and valuable consideration. In *Dorsey* v. *Wolff,* 142 Ill. 589, it was held a provision in a note whereby the maker promises to pay an attorney's fee of ten per cent in case suit is brought thereon, either in such suit or by a separate action, passes by the assignment of the note as an incident to the main debt, and the assignee may recover such fee in an action on the note or in a separate action brought after suit on the note. The agreement to pay the attorney's fees in case judgment should be confessed upon the note in question gave the note currency as well as security, and rendered the note more valuable than though a provision for the payment of attorney's fees had not been incorporated in the note and power of attorney. Such agreement was supported by a good consideration, and by the transfer of the note passed to its legal holder.

The contention that the attorney's fees provided for in the note and warrant of attorney were unlawfully included in the judgment cannot be sustained.

It is next contended that the endorsement on the note was not sufficient, in law, to transfer the title of the note to the appellees. In *Kistner* v. *Peters,* 223 Ill. 607, a note was made payable to the order of Rosa M. Rinehart, who wrote on the back of the note, "I hereby acknowledge myself a principal maker of this note with E. N. Rinehart and my liability as such principal jointly with him.—Rosa M. Rinehart," and delivered the same to Hettie J. Peters, who subsequently brought suit on the note. At the hearing, by leave of the court, she wrote the words, "For value received I assign the within note to. Hettie J. Peters," immediately preceding the words hereinbefore quoted, and it was held that the legal title to the note, by virtue of the original endorsement, passed to Hettie J. Peters, and that it was not error to permit her to write on the back of the note the words which she did, preceding the original endorsement thereon. On page 611 of the opinion in that case this court said: "The name of the payee upon the back of a negotiable instrument will transfer the legal title to the same, and it makes no difference that there is written above it language enlarging the liability of the endorser, such as a guaranty of the payment of the note.—*Heaton* v. *Hulbert,* 3 Scam. 489; *Herring* v. *Woodhull,* 29 Ill. 92; *Judson* v. *Goodwin,* 37 id. 268." We are of the opinion the name of D. L. Buckworth upon the back of the note was sufficient to transfer the title to said note.

It is further contended that the note was transferred to I. N. Porter or bearer and that the legal title to the note did not pass to the legal holder of the note as bearer. The evidence shows that the name I. N. Porter was that of a fictitious person, and the law seems to be, where there is no statute on the subject, that the transfer of a negotiable instrument to a fictitious person or bearer will be treated as payable to bearer, and that the holder of such paper may bring a suit thereon in his own name. (Randolph on Commercial Paper, par. 161; 2 Parsons on Notes

and Bills, p. 591, and note.)   In *Grant* v. *Vaughan,* 3 Burr. 1516, it was held a bill payable to a fictitious name or bearer, as, *e. g.,* to "Ship Fortune or bearer," is payable to bearer.  See, also, *Plets* v. *Johnson,* 3 Hill, 112.

It is said, however, that this rule does not apply where the maker of the instrument does not know that the note is payable to a fictitious person.  If the rule is subject to the claimed exception this note was made payable to D. L. Buckworth and by him endorsed to a fictitious person or bearer.  The endorsement to the fictitious person was an endorsement to no person at all, and we think that part of the endorsement may be stricken out and the endorsement would then stand to "bearer," which would permit the appellees to maintain this suit.  The case at bar in that particular differs from an endorsement to a fictitious person or to a fictitious person or order, which seem to be the kind of cases relied upon by appellants to sustain their contention.  We do not think, therefore, the cases in this State which hold that when a negotiable instrument is payable to a particular person or bearer the same must be endorsed by the particular person named as payee in order to pass title to the note apply here, as no specific person is named in this endorsement, I. N. Porter being a fictitious person.

It is also claimed it was error to refuse appellants the right to cross-examine Wesley M. Owen as to his knowledge of the facts surrounding the execution of said note. In the first place, the interrogatories propounded to Wesley M. Owen were not proper cross-examination; and secondly, there was no evidence tending to show that Wesley M. Owen was the agent of J. Keenan at the time Keenan purchased the note.  At that time Wesley M. Owen was representing D. L. Buckworth and received from Buckworth $75 for his services.

It is finally contended that the court erred in declining to permit the appellants to testify to the facts surrounding the execution of the note and warrant of attorney.  There

was no evidence that J. Keenan had any knowledge of the · facts surrounding the execution of the note at the time he purchased said note, and the appellees were suing as legatees, and the court properly declined to permit appellants to testify against them. *McAyeal* v. *Gullett,* 202 Ill. 214.

Finding no reversible error in this record the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE DUNN, dissenting:

The appellees' title to the note and their right to maintain the suit are derived through the endorsement to I. N. Porter or bearer. Because I. N. Porter was not a real person the opinion of the majority holds this endorsement equivalent to an endorsement to bearer, and that the title therefore passed by delivery to appellees. From this I dissent. In this State the words "or order" and "or bearer," in an instrument payable to a person named or order, or to a person named or bearer, are surplusage. The legal effect of the instrument, whether payable to a person named or order, or to a person named or bearer, or to a person named, only, is the same, and in either case the instrument is payable only to the person named or to his order. (*Hilborn* v. *Artus,* 3 Scam. 344; *Sappington* v. *Pulliam,* id. 385; *Roosa* v. *Crist,* 17 Ill. 450; *Turner* v. *Peoria and Springfield Railroad Co.* 95 id. 134.) The doctrine that treats negotiable paper made payable to a fictitious person as if made payable to bearer, and so negotiable without endorsement, applies only to paper put in circulation by the maker with knowledge that the name of the payee does not represent a real person. (*Shipman* v. *Bank,* 126 N. Y. 318; *Armstrong* v. *National Bank,* 46 Ohio St. 512; *Chism, Churchill & Co.* v. *Bank,* 96 Tenn. 641.) Since Buckworth, in making the endorsement, did not know that I. N. Porter was a fictitious person that doctrine cannot be applied in this case, and there was no evidence that appellees were the legal owners of the note.