**George W. Ridings et al., Defendants in Error, v. Thomas Hynds et al., Plaintiffs in Error.**

**Gen. No. 5243.**

NEGOTIABLE INSTRUMENTS—*defenses to accommodation paper.* The nature of accommodation paper presupposes that there was no consideration given for it and no recovery can ever be had thereon by the original payee against the accommodation maker; that while the accommodation maker can impose any restrictions upon the use of such paper that he may see fit at the time it is issued, still, unless such restrictions are written upon the paper or otherwise brought to the knowledge of the transferee for value before he has purchased the paper, such restrictions constitute no defense to the

paper, and the same rule with reference to fraudulent representations which do not go to the execution of the paper but only apply to the reasons which prompted the maker to lend his credit, must apply to accommodation paper which applies to other commercial paper, and unless knowledge of such fraudulent representations is brought home to the transferee before he purchases the paper, he will take it as an innocent purchaser, free from the defense of fraud.

Bill in equity. Error to the Circuit Court of Grundy county; the Hon. EDGAR ELDREDGE, Judge, presiding. Heard in this court at the October term, 1909. Reversed and remanded. Opinion filed March 11, 1910. Certiorari denied by Supreme Court (making opinion final).

J. L. O'DONNELL and T. F. DONOVAN, for plaintiffs in error.

TOM H. MILNER and CHARLES F. HANSON, for defendants in error.

MR. JUSTICE WILLIS delivered the opinion of the court.

F. M. Ridings, who was engaged in buying and shipping live stock, had a line of credit with and became indebted to the Marengo Savings Bank of Marengo, Iowa, in the sum of $31,000. On March 31, 1903, he delivered to the bank a deed to a section of land in North Dakota, executed by his brother, G. W. Ridings, and was allowed a credit of $7,000, and also gave the bank his four notes aggregating $25,000, which left $1,000 to his credit. He promised to give in the place of these notes, notes for an equal amount, secured by other members of his family, and on April 4, 1903, gave his notes for $5,000 each, two of them signed by F. M. and G. W. Ridings and three by G. W. and F. M. Ridings, and took up the first four notes. These last five notes were taken up by five notes for $5,000 each, executed and delivered to the bank October 22, 1903, one signed by F. M. Ridings and G. W. Ridings, one by G. W. and F. M. Ridings, one by G. W., F. M. and Anne Ridings, one by F. M., G.

W. and Anne Ridings, and one by Anne, F. M. and G. W.
Ridings. On March 29, 1904, these last notes were re-
newed by giving five notes of $5,000 each, two of which
were signed by G. W. Ridings and three by Anne Rid-
ings, all payable to the order of F. M. Ridings and
secured by a trust deed on a farm of 160 acres in
Grundy county, Illinois, owned by Anne Ridings, val-
ued at from $175 to $180 per acre, on which there was
a prior mortgage of $4,800. This trust deed was ac-
knowledged March 12, 1904, and on that day filed for
record in said county by G. W. Ridings, and the same
day, with the notes, taken by him to the Marengo Sav-
ings Bank. On March 15, 1904, the notes were en-
dorsed and the trust deed assigned by F. M. Ridings
to the Marengo Savings Bank. The notes were pay-
able five years after date with interest at three per
cent per annum, and the trust deed contained a clause
providing that there should be no forfeiture for non-
payment of interest until the maturity of the notes.
About December 6, 1906, the bank sold the notes and
assigned the trust deed to Thomas Hynds and Douglas
J. Hynds, brothers, for $12,000 cash, and gave the
assignees of the notes a written guaranty that they
were acquired by the bank for a full and valuable con-
sideration, no part of which had been paid. December
23, 1906, Anne Ridings died testate, leaving surviving
five sons and two daughters, and on March 7, 1907, her
will was admitted to probate, and George W. Ridings
and Alice B. Ridings, now Alice B. Quigley, two of
her children, qualified as executors thereof. In Febru-
ary, 1908, one of the notes signed by Anne Ridings
was filed against her estate by Hynds Brothers and
judgment was entered thereon by the County Court of
Grundy county July 13, 1908, from which the executors
appealed to the Circuit Court of said county.

On July 1, 1905, the executors, with other children
of Anne Ridings, filed a bill in equity in the Circuit
Court of Grundy county against the Marengo Savings
Bank, Thomas Hynds, Douglas J. Hynds, Frank W.
Ridings and George Ridings. William A. Ridings was

later made a defendant. The bill admitted the execution and delivery of the notes and trust deed by Anne Ridings to Frank M. Ridings and alleged that it purported to be given to secure the payment of five notes dated March 10, 1904, each for the sum of $5,000; and also alleged that the assignment of the notes and trust deed to the Marengo Savings Bank was made for the purpose of enabling the said bank to increase its apparent assets in order to pass inspection by the banking authorities of the State of Iowa; that it was falsely represented to Anne Ridings by Frank M. Ridings and the officials of said bank that the notes and trust deed were to be used for a temporary purpose and then surrendered to her and canceled; that the real purpose for which they were to be used was not disclosed to her; that the purpose was known only to Frank M. Ridings and the officers of said bank; that at the time the notes and trust deed were executed, Anne Ridings was not indebted to Frank M. Ridings or to the bank in any sum; that it was agreed between the officers of the bank and Frank M. Ridings that said bank should retain said notes and trust deed until after inspection of its assets and liabilities by the bank authorities of the State of Iowa; that it was further agreed by the officers of the said bank that they would cancel and return said trust deed and notes to the said Frank M. Ridings as soon as said inspection should be made, but that said agreement was never made known to the said Anne Ridings and that she had no knowledge of it; that said bank, by a pretended assignment, delivered said trust deed and notes to Thomas Hynds and Douglas J. Hynds, who had full knowledge and notice of the purposes for which they were obtained; and further averred that Anne Ridings never received any consideration for said trust deed and notes from Frank M. Ridings or from said bank or from any other person. The bill prayed that the notes be canceled and surrendered and the trust deed canceled, surrendered and released of record. Thomas Hynds and Douglas J. Hynds answered the bill admitting the execution of

the trust deed by Anne Ridings; that it was given to secure the notes described therein, and the assignment thereof by the bank to them; and denied that said assignment was pretended, or that said notes and trust deed were assigned to the bank for the purpose of enabling said bank successfully to pass inspection; and averred that they only increased the assets of said bank; and denied that it was falsely represented to Anne Ridings by Frank M. Ridings and the bank officials that said notes and trust deed were to be used for a temporary purpose and in thirty days to be surrendered to her and canceled; and denied that the real purpose for which said trust deed and notes were to be used was not disclosed to the said Anne Ridings and was known only to Frank M. Ridings and the bank officials; and averred that said notes and trust deed were procured, executed and delivered for the sole purpose of securing a *bona fide* indebtedness and that at the time of the execution of said trust deed, Anne Ridings was indebted to said bank in the sum of at least $15,000, George W. Ridings in the sum of $10,000 and F. M. Ridings in the sum of more than $25,000; and that his indebtedness was the same indebtedness due from Anne Ridings and George W. Ridings; and denied that, at the time of the assignment of said trust deed and notes by Frank M. Ridings to the bank, it was agreed between the bank officials and Frank M. Ridings that the bank should retain said trust deed and notes until after the inspection of the assets and liabilities of said bank by the bank authorities of the State of Iowa, and that as soon as such inspection should be made the officials would determine and cancel said trust deed and notes. The bank answered the bill and alleged that at the time of the execution of the notes and trust deed, Anne Ridings, F. M. Ridings and George W. Ridings were indebted to the bank in the sum of $25,000, of which sum Anne Ridings was indebted for $15,000, which indebtedness was evidenced by said notes, secured by said trust deed; and denied

that it held the trust deed and notes otherwise than as security for a *bona fide* indebtedness, and denied that it agreed to deliver up and cancel said notes and trust deed after it had exhibited the same to the bank authorities of Iowa. It was stipulated that the suit on the note against the estate of Anne Ridings pending in the Circuit Court might be consolidated and tried with the chancery case, and that the evidence introduced on either case might be considered as offered in the other case, and as competent and relative thereto. Upon the hearing, complainants obtained leave to, and amended the bill, by setting up that Hynds Brothers paid $12,-000 for these notes and trust deed, and averred that they were ready and willing to pay Hynds Brothers that sum with interest at five per cent from December 5, 1906, until paid; and asked that upon payment of the same, the five notes be canceled and the trust deed set aside. The court found in favor of complainants and ordered that they pay Hynds Brothers, within one hundred and thirty days, $12,000, with interest at the rate of five per cent, and upon payment of the same, the trust deed and the three notes executed by Anne Ridings be null and void, and that, the interest of Frank M. Ridings and George W. Ridings in the estate of Anne Ridings be used in liquidation of the $12,000 and interest thereon. Thomas Hynds and Douglas J. Hynds sued out this writ of error to review the decree.

The theory of the bill as amended seems to be, that the notes in question were issued by Anne Ridings without a consideration moving to her and delivered to her son, Frank M. Ridings, as accommodation paper with the understanding that they were to be used by him in dealing with the bank temporarily, and that certain restrictions as to the use of the notes in future were imposed; but it is not claimed that such restrictions were written into the notes or stipulated for in the trust deed. The proof utterly fails to show that plaintiff in error had any knowledge that there were any restrictions claimed when they purchased the

notes and took the assignment of the trust deed. It is true that Frank M. Ridings testified that the notes and trust deed were made and delivered to the bank to help the bank deceive the bank authorities or to help the bank evade the law, but he did not deny that he owed the bank at least that amount of money when the notes were made, and in a letter written to the bank July 22, 1905, he expressly admitted an indebtedness of $25,000, and would not deny on the trial that he owed them $50,000 in the fall of 1904. He also attempted to convey the idea that there was an arrangement between Anne Ridings and Henderson, the cashier of the bank, by which the notes and trust deed were to be returned to her within thirty or sixty days, or as soon as he could sell some cattle, and that Henderson made a statement to that effect to Anne Ridings. On July 22, 1905, he addressed a letter to the bank that read in part: "You do not seem to be aware of the fact that at the time this instrument was given on my mother's farm to secure some of my indebtedness it was clearly and distinctly understood as one of the conditions of this security that not until the expiration of the five years was she in no way to be molested in this matter of principal or interest and further I was to pay the interest as nearly as possible when due, but was to be allowed an additional time even on the interest if I so desired." George W. Ridings testified that Henderson told Anne Ridings that anything she might give would be held as a temporary paper and would be returned; and that as Frank sold his cattle there would be no difficulty in his paying any overdraft he might have; but his examination disclosed that this conversation was had when the earlier notes were made which the notes in controversy were given to take up. He also wrote a letter to Henderson and the bank at variance with his statements as a witness. Taking into consideration the pecuniary interest of Frank M. and George W. Ridings, the apparently irreconcilable difference between their verbal testimony and the statements in

their letters written before a law suit was contemplated, we are of the opinion that defendants in error's proof fails to establish the averments of the bill that the bank obtained the notes and trust deed by reason of deception practiced upon Anne Ridings. Again, George W. Ridings testified on direct-examination and reiterated the statement on cross-examination, that Henderson, the representative of the bank, told Anne Ridings before she executed the notes preceding the notes in controversy that they were to be used to make the bank authorities think the bank was in better condition than it really was, to satisfy them. We seriously doubt the truth of this statement attributed to Henderson, but if such statement were made to Anne Ridings and she executed the notes for the unlawful purpose of aiding Frank M. Ridings and the bank officials in deceiving the bank authorities of the state of Iowa, she nor her estate will not be discharged from liability when the notes appear in the hands of innocent purchasers for value.

The amendment to the bill and the offer to pay plaintiffs in error the amount paid for the notes with interest, seems to suggest that the theory of defendants in error was that the notes were accommodation paper and that Anne Ridings was the accommodation maker, and that the transferee of accommodation paper can recover only the amount paid for the notes. It is difficult to see how Anne Ridings can be an accommodation maker of the notes signed by George Ridings alone, and secured by the trust deed. But from the view we take of the law applicable to the facts appearing in this record, it is not necessary to consider this last suggestion, but assuming that she was an accommodation maker, there are no restrictions as to their use written on their face or in the trust deed, and no proof of notice of any restrictions as to their use, or any preponderance of proof of fraudulent representations made to Anne Ridings at the time the notes and trust deed were

signed. In Naef v. Potter, 226 Ill. 628, it was said that the nature of accommodation paper presupposes that there was no consideration given for it and no recovery can ever be had thereon by the original payee against the accommodation maker; that while the accommodation maker can impose any restrictions upon the use of such paper that he may see fit at the time it is issued, still, unless such restrictions are written upon the paper or otherwise brought to the knowledge of the transferee for value before he has purchased the paper, such restrictions constitute no defense to the paper, and the same rule with reference to fraudulent representations which do not go to the execution of the paper but apply only to the reasons which prompted the maker to lend his credit, must apply to accommodation paper which applies to other commercial paper, and unless knowledge of such fraudulent representations is brought home to the transferee before he purchases the paper, he will take it as an innocent purchaser, free from the defense of fraud. "A note, tainted with fraud or other infirmity, passing into the hands of an innocent purchaser, not chargeable with notice, and for a valuable consideration, he acquires it purged of the defense." Woodworth v. Huntoon, 40 Ill. 131. When a promissory note has been assigned, the presumption will be indulged that it was for value and *bona fide*. Persons questioning the fairness of the transaction, to defeat the assignment must prove that it was not for value or that it was made for a fraudulent purpose. Wightman v. Hart, 37 Ill. 123; Keenan v. Blue, 240 Ill. 177.

The proof is clear that Anne Ridings gave her notes and the trust deed to secure money owing the bank; and that the bank received these five notes in place of other notes, and sold them to plaintiffs in error in due course of business. The evidence shows that plaintiffs in error, Hynds Brothers, paid considerably less than their face value, but they had over two years to run and bore only three per cent interest, and the

trust deed was so worded that it could not be foreclosed in default of the payment of interest until the maturity of the notes, and they might have to protect themselves against the prior incumbrance of $4,800 with the interest accruing thereon, and pay the taxes and make necessary repairs. As Anne Ridings did not write into the notes or trust deed any conditions or limitations of her liability, Hynds Brothers as transferees are entitled to recover the face value thereof.

The decree is reversed and the cause remanded and the Circuit Court is directed to enter judgment for the amount of the principal and interest due on the note in the cause there pending on appeal from the County Court, and that the bill in the chancery case be dismissed for want of equity at the costs of complainants.

*Reversed and remanded with directions.*