JULES J. KOHENN, Plaintiff and Counterdefendant-Appellee, *v.* PLANTA-TION BAKING COMPANY, Defendant and Counterplaintiff-Appellant.

(No. 58808; 

First District (5th Division)—September 12, 1975.

Much, Shelist, Freed, Denenberg & Ament, P.C., of Chicago (Michael J. Freed and Steven E. Wollack, of counsel), for appellant.

Biestek & Associates, of Arlington Heights, for appellee.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Defendant appeals from a judgment awarding plaintiff damages for breach of a real estate sale contract and from denial of its counterclaim for breach of the same contract. It contends that the trial court erred because: (1) the factory building was not materially and incurably damaged; (2) the "time is of the essence" provision in the contract was waived; and (3) its counterclaim should have been granted.

On August 4, 1969, plaintiff filed a complaint seeking to recover the $6500 earnest money deposit he had given defendant under a real estate sale contract for the purchase of defendant's factory building. Attached to the complaint was a copy of the real estate sale contract, dated December 17, 1968, which provided that plaintiff was to purchase defendant's factory building for $65,000 with $6500 being deposited as earnest money; that time is of the essence and the closing date is "January 1, 1969, or sooner providing that at least thirty days notice is given buyer or seller that premises are ready for occupancy" provided title, as evidenced by a title insurance policy furnished by the seller five days before closing, is good or accepted; that possession is to be delivered at closing; and that:

> "If this contract is terminated without Purchaser's fault, the earnest money shall be returned to the Purchaser, but if the termination is caused by the Purchaser's fault, then at the option of the Seller and upon notice to the Purchaser, the earnest money shall be forfeited to the Seller and applied first to the payment of the Seller's expenses and then to payment of broker's commission; the balance, if any, to be retained by the Seller as liquidated damages."

Additionally, the contract provided:

> "If prior to closing, the improvements on said real estate shall be destroyed or materially damaged by fire or other casualty, this contract, at the option of the Purchaser, shall become null and void and the earnest money shall be returned to Purchaser."

Defendant filed an answer denying that plaintiff was entitled to return of his earnest money and also filed a counterclaim for damages for breach of the real estate sale contract. Attached to the counterclaim was a copy of a contract defendant had subsequently entered into with a third party for sale of the factory for $50,000. Plaintiff answered the counterclaim denying that he had breached the contract.

The following pertinent evidence was adduced at the bench trial.

*Melvin Kaufman under section 60.*

He is President of defendant Plantation Baking Company. In the fall of 1968, defendant placed an advertisement for the sale of its factory. Plaintiff answered the advertisement and on October 12, 1968, signed an agreement to purchase the factory, depositing $1000 as earnest money. Subsequently, on December 17, 1968, they signed the real estate sale contract which is the subject matter of the instant case and plaintiff gave him an additional $5500 as earnest money. Defendant intended to apply the proceeds of the sale to its outstanding mortgage on the property. Although defendant still had some of its equipment in the building in

January of 1969 and the building was not ready for occupancy until the end of January, defendant was prepared to close on January 1, 1969.

He received a letter from plaintiff dated January 21, 1969, in which plaintiff rescinded the real estate sale contract and demanded return of his earnest money. Plaintiff complained in his letter that:

> "The premises are filthy. They have not been vacated; an oven and assorted miscellany are still on the premises. A large pile of trash and garbage is moldering in the back. The floor is slimy and slippery from the years of accumulation of spilled syrups and flour and other ingredients of your baking operation. A sour odor of decay assails the nostrils as one enters. As a result of not keeping the heat up, the water pipes have frozen and burst in places and, in thawing, are now dripping water over the floor to the point of making it hazardous to attempt to walk through the plant. The boiler has burst and is flooding the boiler room."

He also received a letter from plaintiff dated January 26, 1969, and a telegram dated February 3, 1969. Both reconfirmed plaintiff's rescission of the contract and demanded return of his earnest money. On January 28, 1969, defendant mailed plaintiff a letter stating that it was ready to close the deal.

*Plaintiff Jules J. Kohenn*

Prior to January 1, 1969, he spoke with Melvin Kaufman by phone. Melvin promised to vacate the premises by Christmas, and to steam clean and prepare the factory for occupancy by January 1, 1969. He denied saying he was in no hurry to close; and although he was unable to sign his name because of an injury to his hand, he was prepared to close on January 1, 1969. In mid-December, he talked to Leon Kaufman at his home and received a key to the factory. He could not recall whether or not Leon had told him not to show anyone the building because it had not been cleaned.

On January 20, 1969, he visited the factory with a friend. Water from broken pipes covered the floor in the furnace room and the floor was slippery and slimy; some equipment had been left in the building; and garbage had been piled in the back. He then wrote his letter of January 21, 1969, rescinding the contract. He confirmed the authenticity of the documents Melvin had identified and he identified a letter he had received from defendant's attorney informing him that his earnest money was forfeited.

Following this evidence, plaintiff rested his case and defendant's motion to dismiss the case was denied.

### Melvin Kaufman

In addition to confirming much of his prior testimony, he testified that plaintiff had told him he was in no hurry to close. Although some items were left in the building, it was vacated on December 18 and 19, 1968, and defendant's attorney was preparing the closing documents. On December 21, 1968, he called plaintiff and told him that he wanted to close, but plaintiff said he could not because he had injured his hand. Just before Christmas, Melvin again called plaintiff and told him he would clean the building and remove the oven which had been left behind. Plaintiff said there was no hurry and advised him to take his time. Plaintiff again said he could not close because of his injured hand and would let him know when he was able. Later, plaintiff phoned him requesting a key to the building, and he told plaintiff the building had not been cleaned.

On January 27, 1969, after he had received plaintiff's letters, plaintiff told him he would consummate the deal and he made a notation on plaintiff's January 26 letter to that effect. However, after plaintiff's telegram, defendant initiated the search for another buyer. Finally, in September of 1970, they sold the building for $50,000.

### Leon Kaufman

He is vice president and secretary-treasurer of Plantation Baking Company. He first met plaintiff in the fall of 1968 and again in December of 1968 when plaintiff came to his home for a key to the factory. At that time, he told plaintiff the factory had not been cleaned, but plaintiff said it was all right because the customer he was going to show it to would understand.

He visited the building in response to plaintiff's letter of January 21, 1969. He confirmed that some water was on the floor as a result of the removal of some of their equipment and of the cracking of a few water pipes while the heat was off. He immediately called Madison Plumbing Co. and told them to repair the damage. The repairs were finished in mid-February, 1969, at a total cost of $331.40. In the meantime, he dispatched a group of employees to remove the oven and to finish cleaning the building and this process was completed in January.

Following this evidence, the court entered judgment for plaintiff on both the complaint and the counterclaim and awarded him $6500 damages, the total amount of plaintiff's earnest money deposit.

### OPINION

Defendant contends that the trial court erred because the property was not materially and incurably damaged. The law is well established that the rights of the parties to a contract are governed by its terms. In

the instant case, the real estate sale contract the parties entered provided that if the premises are "destroyed or materially damaged by fire or other casualty" prior to closing, the purchaser may rescind the contract and have his earnest money returned. As evidenced by his letter of January 21, 1969, one of plaintiff's reasons for rescinding the contract was damage to the property. Thus it must be determined whether the premises were "materially damaged by fire or other casualty."

Defendant relies upon *Christopher v. West*, 409 Ill. 131, 137, 98 N.E.2d 722, 725, in which the Illinois Supreme Court stated:

> "If any claimed defect was such as to affect the merchantability of the title and one which was not cured or curable within a reasonable time as provided in the contract, no tender of the full purchase price was necessary. *On the other hand, if the same was not material or was curable within a reasonable time, Christopher had no correct basis in law for a recission of the contract.*" (Emphasis added.)

We note that this case did not specifically address the issue of the materiality of damage to property.

Plaintiff relies upon *Loving v. Manor Court, Inc.*, 10 Ill.App.3d 479, 294 N.E.2d 329, a case which does involve the issue of the materiality of damage. There, the reviewing court reversed the trial court's entry of a judgment notwithstanding a jury's verdict in plaintiff's favor in an action for recovery of earnest money. In *Loving*, plaintiff rescinded the sale of a residence because of substantial water damage to the premises resulting from two rain storms. Although defendant spent $28 for certain cosmetic repairs to the residence, the reviewing court determined that the jury could properly have found that the damages resulting from the rain storms were material since the cracks in the basement wall were not superficial even though the repairs themselves might have been considered superficial. The court also stated that the damage to the plaster and in particular its future strength could neither be discounted nor eliminated by a claim that the stains had been covered with paint; nor could the damage to the carpet be discounted by indicating that the stains had disappeared.

We do not believe that either *Loving* or *West* disposes of the issue raised here. Notwithstanding plaintiff's letter of January 21, 1969, describing the damage to the building in elaborate prose, the damage does not appear to be material. The few water pipes which had burst were repaired at a cost of $331, a minimum amount considering that the sale price of the building was $65,000. Most of plaintiff's complaints related to the uncleanliness of the premises. However, plaintiff was informed in advance that although the building was going to be

cleaned shortly, it had not yet been cleaned. Furthermore, the damage to the building was not caused "by fire or other casualty" but rather was the result of poor housekeeping and only became apparent when defendant vacated the building. In these circumstances, the damage to the building did not warrant plaintiff's rescission of the contract.

● 1  Defendant next contends that the trial court erred because the "time is of the essence" provision was waived. Clearly, such a provision in a contract may be waived. (*Christopher v. West*, 409 Ill. 131, 136, 98 N.Ed.2d 722, 725.) At trial, plaintiff advanced a second reason for his rescission of the contract. He argued that defendant had not complied with its contractual obligations of supplying the title documents and of delivering possession within the time specified by the contract and therefore since time was of the essence the contract was properly terminated. However, while plaintiff denied extending the time for closing, Melvin Kaufman testified that plaintiff told him he was in no hurry to close and that on at least two occasions in December plaintiff requested a postponement of closing because he was unable to sign his name as a result of an injury to his hand which had required amputation of part of one of his fingers. Moreover, plaintiff admitted being unable to sign his name as a result of his disability. Also, Melvin Kaufman testified that defendant had vacated the building on December 19, 1968, long before the date set for closing; that he had called plaintiff on December 21, 1968, telling him that defendant was ready to close; and that he had previously instructed defendant's attorney to prepare the closing documents. In these circumstances, the "time is of the essence" provision was waived and provides no basis for rescinding the contract.

● 2  Defendant finally contends that the trial court erred in not granting its counterclaim for damages resulting from plaintiff's wrongful rescission. The real estate sale contract specifies that plaintiff's earnest money deposit is forfeited if he wrongfully terminates the contract and that the deposit is then to be treated as liquidated damages. Since we have already determined that plaintiff's rescission was wrongful, by the terms of the contract defendant was entitled to retain plaintiff's earnest money as liquidated damages. Since the contract specifies that the deposit is to be retained as liquidated damages, defendant is not entitled to additional recovery; and the trial court's denial of defendant's counterclaim was proper.

The judgment for plaintiff on his complaint is reversed; and the judgment for plaintiff on defendant's counterclaim is affirmed.

Reversed in part; affirmed in part.

DRUCKER and SULLIVAN, JJ., concur.