(No. 48732.-

JOHN J. CALNAN CO., Appellee, v. TALSMA BUILD-ERS, INC., Appellant.

*Opinion filed June 27, 1977.—Rehearing denied Oct. 3, 1977.*

214

Thomas, Wallace, Feehan & Baron, Ltd., of Joliet (James T. Bradley, and Thomas Feehan, of counsel), for appellant.

Fein & Hanfling and Benjamin I. Coven, of Chicago, for appellee.

MR. JUSTICE CLARK delivered the opinion of the court:

John J. Calnan Co. (hereafter Calnan), a plumbing contractor, sued for a declaratory judgment against the general contractor, Talsma Builders, Inc. (hereafter Talsma), seeking rescission of the plumbing subcontract, in the circuit court of Cook County. Talsma counterclaimed for a declaration that the subcontract could not be rescinded and for damages. The circuit court found for Calnan by rescinding the subcontract and against Talsma on its counterclaim. The appellate court affirmed. 40 Ill. App. 3d 62.

On May 8, 1974, the president of Talsma, by telephone, requested the vice-president of Calnan to submit a "rush bid" as soon as possible. Talsma had just signed a contract to construct a nursing home in Robbins, Illinois, but its previously intended plumbing subcontractor was unable to get a surety bond. Calnan delivered a bid of $237,000 on May 14. On the following day, Calnan informed Talsma it had failed to include bathtubs in its plumbing subcontract bid. An agreement, which included $40,000 for the bathtubs, was prepared and delivered to Calnan on June 13. The amount agreed upon was $277,000 to be paid by Talsma to Calnan in monthly payments of 90% for "work done in any

preceding month, in accordance with estimates prepared by the subcontractor and accompanied by waivers of lien, covering all labor and materials incorporated in the work to date \*\*\* such payments to be made as payments are received by the contractor from the owner (Allen L. Wright Development Corp.) \*\*\*." Under the contract Calnan was to provide performance and surety bonds. Also, paragraph K of the agreement provided:

"This contract is predicated upon the ability of the Allen L. Wright Development Corporation to procure the finalization of mortgage financing through their mortgage lendors and the backing of said mortgage by the F.H.A. [Federal Housing Administration]."

The FHA issued, on June 14, a "Commitment for Insurance of Advances," that is, a commitment to insure the mortgage on the construction. The "Commitment" was extended by letters three times, the last until December 13, 1974. The FHA officially authorized the construction to begin on August 26. (On December 5, 1974, the FHA mortgage insurance was signed.) Calnan claims that, at the time the agreement was reached, Talsma had assured it there was adequate financing and that work was to begin immediately.

Talsma claims that, during the period from June 13 to July 10, it moved workers onto the construction site to begin initial excavations and operations; it advanced money from its own funds to pay other subcontractors; and the subcontract remained "unexecuted" in Calnan's offices until July 10. Calnan returned the signed contract on or about July 10.

Talsma requested the performance bond, as required by paragraph Q of the contract, from Calnan on August 15. Talsma did not receive it.

Calnan began its work August 18 and asserts it requested a payment from Talsma at the end of August. Talsma, on September 6, requested Calnan to submit a

"Contractor's Affidavit" for the purpose of supporting Calnan's first-month requisition.

In the middle of September, Calnan discovered it had omitted from its bid the estimated cost of the entire water supply system. On September 16, it informed Talsma of this omission and asked for an increase of approximately $31,000 in the subcontract amount. Calnan also informed Talsma it could not go ahead with the contract as it was and it would be unable to post a surety bond. Negotiations ensued, but the owner declined to increase the amount, so Talsma refused Calnan's request.

At the end of September, Calnan submitted its first requisition, which included a claim for $27,900, or 100% of the payment for the previous month's work, and a claim for approximately $31,000 (the omitted water supply system). Talsma rejected the requisition. Talsma claims that, from September 17 to October 11, Calnan performed no work, but Calnan denies this. On October 9, Calnan wrote to Talsma that it could no longer honor the contract because it had received no payment and because paragraph K, a claimed condition precedent, had not been fulfilled. On October 23, Calnan personnel left the job site for the last time, having completed the outside plumbing work, except for the water supply system, necessary for the excavation and construction of the main building. In a letter dated October 23, Talsma rejected Calnan's requisition, demanded Calnan complete the contract, and requested Calnan to submit a proper requisition along with the contractually required surety bond. Calnan submitted a second requisition, which, Talsma says, again sought 100% payment instead of 90% for work done. Talsma again rejected.

Calnan filed suit on November 8 for a declaratory judgment to rescind the contract, and Talsma countersued. The issues on appeal are: whether the evidence is sufficient to sustain (1) rescission of the contract by reason of

mistake, and (2) the finding on Talsma's counterclaim that Calnan was not in breach of the contract. Additionally, Calnan contends that Talsma breached the contract by failing to make payments to Calnan and that paragraph K of the subcontract, concerning the finalization of mortgage financing for the owner, was not fulfilled.

The circuit court concluded that, technically, paragraph K was not complied with; indeed, the trial court said that the whole contract was "followed" only "very loosely." It is also clear that the trial court was concerned with the burden Calnan's mistake placed on the plumbing subcontractor at a time of rising costs and a depressed industry. The appellate court shared this concern, affirmed the circuit court and held that Calnan's mistake justified rescission.

A reviewing court must not set aside findings of fact unless contrary to the manifest weight of the evidence. (*Kenny Construction Co. v. Metropolitan Sanitary District* (1971), 52 Ill. 2d 187.) We believe the finding of the trial court that rescission of the contract was justified was against the manifest weight of the evidence.

There are three conditions necessary before a contract will be rescinded for a mistake by one of the parties. First, the mistake must relate to a material feature of the contract; second, it must have occurred despite the exercise of reasonable care; and third, the other party must be placed *in statu quo. Steinmeyer v. Schroeppel* (1907), 226 Ill. 9, 13; *Winkelman v. Erwin* (1929), 333 Ill. 636, 639; *Smuk v. Hryniewiecki* (1938), 369 Ill. 546, 555.

There is little doubt that the approximately $31,000 error by Calnan was a material feature of the contract. Both parties concede this. The pivotal points for our consideration are the last two conditions: Calnan's exercise of reasonable care and placement of Talsma *in statu quo.*

In *Steinmeyer v. Schroeppel* (1907), 226 Ill. 6, a lumber company had been asked for a bid on lumber by a

contractor. Due to a clerical miscalculation in addition, the lumber company submitted a bid $221 below the bid of $1,867 that it had intended and approximately $250 below the two other bids the contractor received. The contractor accepted the low bid six days later. The lumber company found the error that evening, notified the contractor the following morning, and refused to furnish the lumber below $1,867. The contractor, after buying the lumber elsewhere, sued for the difference, while the lumber company asked for rescission because of mistake. The trial court cancelled the contract, but the appellate court reversed. This court affirmed the appellate court, finding "no evidence tending to prove any special circumstances excusing the blunder." (226 Ill. 6, 13.) Reasonable care simply had not been exercised by the lumber company.

Although Talsma sought a "rush bid" in the instant case, that simply is not sufficient to justify rescission. Calnan did not discover the mistake of failing to include the water supply system in its bid until four months after the request for a bid was made. Moreover, Calnan had one month from the date of its bid offer on May 14 before the delivery of the contract (for signature) on June 13 to check its estimates. (Calnan did not return the signed contract until July 10.) The vice-president of Calnan admitted Calnan has a review procedure or double check system whereby bid preparations are examined. He also admitted it was *not* utilized for the Talsma bid.

If this court, in *Steinmeyer,* was unable to find the exercise of reasonable care by the lumber company, which discovered the error the same day the bid had been accepted and notified the contractor almost immediately, it is difficult to see how we could find the exercise of reasonable care by Calnan, which failed to use its review system and failed to discover the error until four months after its bid had been accepted. As a result of this lack of

diligence, Talsma relied on Calnan's bid and was well into construction before the error was found.

If it is clear Calnan failed to exercise the required reasonable care, it is only slightly less clear that Talsma could not be placed *in statu quo*. Calnan had already been working a month when the mistake was discovered. Talsma went to the owner to determine if an arrangement could be made. The owner refused with the afterthought that the problem was between Talsma and Calnan. Talsma felt it could not absorb the $31,000 and so it had to turn down Calnan's request for an increase in payment. Talsma was plainly faced with no options. If Calnan stayed but refused to absorb the error, Talsma would have an additional $31,000 to account for. If Calnan left, Talsma would have to negotiate another subcontract with the same pitfalls it had faced when the first plumbing subcontractor was unable to subcontract (and Talsma had turned to Calnan)—but with additional problems: greater costs due to higher prices at a bad time in the construction industry, lack of continuity in the work, and more delays.

We therefore believe Calnan's mistake did not justify rescission under the rule stated in *Steinmeyer v. Schroeppel* (1907), 226 Ill. 9, 13:

> "If there is apparently a valid contract in writing, but by reason of a mistake of fact by one of the parties, *not due* [emphasis added] to his negligence, the contract is different with respect to the subject matter or terms from what was intended, equity will give to such party a remedy by cancellation where the parties can be placed *in statu quo*."

Upon finding the contract was rescinded, the trial court, on Talsma's counterclaim, did not examine the issue of whether Calnan had breached the contract other than in the context of its decision to rescind. For this issue, the cause is remanded.

Calnan contends that Talsma failed to make payments to Calnan and that paragraph K was not fulfilled because Talsma was not adequately financed and because the FHA mortgage insurance was not finalized. As to the contention that Talsma breached for failure to make payments, we also remand. We do not agree with Calnan's contention that paragraph K was not fulfilled.

The FHA issued a "commitment" to back the mortgage on the project on June 14 and authorized construction on August 26. While it was not a finalization of the mortgage insurance, it certainly was an approval and acceptance of the Robbins project subject to certain conditions such as filing of forms and additional information. With the FHA's express permission to commence construction on August 26, the owner was assured of financing and paragraph K was fulfilled even though the actual signing did not occur until December 5.

Even if we assume the facts above do not establish fulfillment of paragraph K, Calnan has waived whatever benefit it could have derived from that claimed condition precedent. Paragraph K was in the contract at all times and not an addendum. Yet Calnan only raised that on October 9, almost two months after it had been on the job. Calnan's prior conduct (working on the project), under the circumstances of this case, is inconsistent with its subsequent reliance on the condition precedent. See *Chicago & Alton R.R. Co. v. Chicago, Vermilion & Wilmington Coal Co.* (1875), 79 Ill. 121, 129.

The mistake of not including the water supply system in the bid was the primary reason for the request for an increase in contractual payments as expressed in Calnan's letter of September 16. Despite the conflicting testimony, the mistake remains the primary reason for Calnan leaving the job site. Therefore Calnan may not rely on paragraph K as a condition precedent (assuming it even is a condition precedent benefiting Calnan) because Calnan has placed its

refusal to perform on other grounds (*i.e.,* mistake). The rule is "that a party having a right to insist upon a condition precedent to the payment of money or other performance on his part will waive the condition precedent by a total denial of liability or by placing his refusal to perform on other grounds." *Andrew Lohr Bottling Co. v. Ferguson* (1906), 223 Ill. 88, 93.

For these reasons, we reverse the appellate and circuit courts and remand to the circuit court for further proceedings consistent with this opinion.

*Reversed and remanded.*