JOHN J. CALNAN CO., Plaintiff and Counterdefendant-Appellee and Cross-Appellant, *v.* TALSMA BUILDERS, INC., Defendant and Counterclaimant-Appellant and Cross-Appellee.

First District (4th Division)  No. 78-1906

Opinion filed September 27, 1979.

Thomas, Wallace, Feehan & Baron, Ltd., of Chicago (James T. Bradley, of counsel), for appellant.

Benjamin I. Coven and Fein & Hanfling, both of Chicago (Norman Hanfling, of counsel), for appellee.

Mr. PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

John J. Calnan Company (Calnan), the plaintiff and counter-defendant, and Talsma Builders, Inc. (Talsma), the defendant and counterclaimant, both appeal from a judgment entered in the circuit court of Cook County. The court there found that Calnan, a subcontractor, was in breach of contract by walking off a construction project and that Talsma, the contractor, was not in breach of contract in failing to make periodic payments to Calnan. The court awarded Calnan $50,600 for the work it completed before abandoning the job site. Talsma was awarded the sum of $20,000 for reasonable costs and damages suffered as a result of Calnan's breach. The net judgment in favor of Calnan was $30,600.

Calnan now argues the court was in error in finding it in breach of the contract and Talsma not in breach. Calnan asked that the $50,600 award in its favor stand and that the $20,000 judgment against it be reversed.

Talsma argues the court erred in ordering it to pay $50,600 after finding that it had not committed a breach of contract. Talsma also appeals the court's ruling denying it attorneys' fees, which it claims it is entitled to under the terms of the contract.

This appeal represents the latest stage in a long history of litigation between the parties. That history is set forth in the supreme court's opinion in *John J. Calnan Co. v. Talsma Builders, Inc.* (1977), 67 Ill. 2d 213, 367 N.E.2d 695. We will repeat here only those facts which are relevant to the issues before us.

In May of 1974 the president of Talsma asked Calnan to submit a bid for plumbing work on a nursing home project in Robbins, Illinois. Calnan delivered a bid of $237,000 on May 14. On the following day, Calnan notified Talsma that it had failed to include bathtubs in the bid. An agreement, which included $40,000 for the omission, was delivered to Calnan on June 13. The agreement provided that Talsma would pay Calnan $277,000 for its work.

Calnan returned the signed contract to Talsma around July 10. The subcontract, insofar as relevant to this appeal, provided that Calnan would receive "monthly payments of 90% of the work performed in any preceding month * * *"; that payment requisitions were to be "accompanied by waivers of lien * * *"; that "such payments [were] to

be made as payments [were] received by the Contractor from the Owner covering the monthly estimates of the Contractor, including the approved portion of the Subcontractor's monthly estimate"; and that

> "In the event the Subcontractor does not submit to the Contractor such monthly estimates prior to the date of submission of the Contractor's monthly estimate, then the Contractor shall include in his monthly estimate to the Owner for work performed during the preceding month such amount as he shall deem proper for the work of the Subcontractor for the preceding month * * *."

The general conditions of the prime contract, expressly adopted by the subcontract, provide in part that "failure to supply waivers of lien * * * will be considered grounds for withholding partial payments * * *." The subcontract also provided that Calnan was to furnish to Talsma a surety bond guaranteeing the faithful performance of the work and the payment of all labor and material bills. Another provision states: "The Subcontractor shall indemnify the Contractor and the Owner against, and save them harmless from, any and all loss, damage, expenses, costs, and attorneys' fees incurred or suffered on account of any breach of the aforesaid obligations and covenants * * *." Finally, the subcontract addresses the possibility of the contractor having to complete the subcontractor's work:

> "Any costs incurred by the Contractor in doing any such portion of work covered by this agreement shall be charged against any monies due or to become due under the terms of this agreement, and in the event the total amount due or to become due under the terms of this agreement shall be insufficient to cover the costs accrued by the Contractor in completing the work, then the Subcontractor * * * shall be bound and liable unto the Contractor for the difference."

On August 15 Talsma requested the performance bond from Calnan. The request was not met. Calnan began working on August 18. In mid-September, Calnan discovered it had omitted from its bid the cost of the entire water supply system. Talsma was asked to increase the subcontract amount by $31,000. Talsma relayed the request to the owner who refused to increase the amount. Talsma consequently refused to change the subcontract. Calnan informed Talsma that it would be unable to post a surety bond.

At the end of September, Calnan submitted a requisition seeking a payment of $27,900, or 100% of the payment for the previous month's work, plus $31,000 for the omitted water supply system. Talsma rejected the requisition. On October 9, Calnan informed Talsma in a letter that it could no longer honor the contract because it had received no payment and because the F.H.A. financing, as required by the contract, had not

been finalized. On October 23, Calnan's people left the job-site for the last time, after completing the outside plumbing work with the exception of the water supply system. Calnan submitted a second requisition, again seeking 100% payment. Talsma again rejected it.

Calnan initiated this action on November 18, 1974, for a declaratory judgment against Talsma, seeking rescission of the plumbing subcontract. Talsma counterclaimed for a declaration that the contract could not be rescinded and for damages. The circuit court found for Calnan by rescinding the contract, and the appellate court affirmed. 40 Ill. App. 3d 62, 351 N.E.2d 334.

The supreme court concluded that rescission by Calnan was not warranted and reversed the lower courts. The case was remanded to the circuit court with directions to consider two issues: (1) "whether Calnan had breached the contract other than in the context of its decision to rescind"; and (2) whether Talsma "breached for failure to make payments * * *." 67 Ill. 2d 213, 220-21, 367 N.E.2d 695, 699.

Testimony relevant to the question of breach will be briefly summarized: Frank Collins, an owner of Calnan, testified that when he submitted his first requisition for payment Richard Reszel, treasurer of Talsma, told him that it was not payable because there was no money available; Reszel also told him that it was not payable because it was incorrectly prepared. On October 18, Arthur Talsma and Reszel told Collins that the bond required by the contract did not make any difference. Collins conceded that Reszel told him, in a letter dated October 23, to revise his payment requisition and to deliver the bonds. Collins said he knew that the payment procedure required that mechanic's lien waivers accompany payment requests. He said his practice was not to submit the waivers with the requisition. Calnan never supplied a waiver or surety performance and material bond to Talsma. Collins told the bonding company about the second bid mistake and they said they could not issue a bond because it looked like a losing proposition.

Arthur G. Talsma, president of Talsma, testified that no mechanic's lien waivers were ever submitted by Calnan. He explained that the waivers were required because the money was set up in escrow with the Chicago Title and Trust Company and would not be released until the waivers had been submitted.

Laurence Acker, the president of Calnan, testified that his company never submitted a waiver before quitting the project. His understanding was that waivers were not submitted with the first requisition; that they were to be submitted with the second requisition.

The first issue is whether there was evidence from which the trial

court could conclude that (1) Calnan was in breach of contract and (2) Talsma was not. Calnan argues its alleged breach, consisting of its suspension of work, was justified due to Talsma's alleged breach, consisting of Talsma's failure to make any payments to Calnan.

■■ The trial court's judgment will not be reversed on appeal unless it is manifestly contrary to evidence in the record. (*La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65.) We cannot say that the trial judge's conclusions concerning breaches of contract were contrary to the manifest weight of the evidence. The evidence below supports the conclusion that Talsma did not breach the contract by failing to pay Calnan because Talsma's duty to pay never ripened due to the failure of a condition precedent imposed upon Calnan.

The rights of the parties to a contract are governed by its terms. (*Kohenn v. Plantation Baking Co.* (1975), 32 Ill. App. 3d 231, 336 N.E.2d 491.) The contract required that Calnan's payment requisitions be accompanied by lien waivers. It also required that Calnan furnish performance and material bonds, although the timing of this obligation is not specified. All witnesses agreed that no waivers or bonds were ever submitted to Talsma by Calnan.

■■ "[T]he rule is well established, that where one has the precedent condition in his favor, that he is not liable to an action until the other has performed * * *." (*Eldridge v. Rowe* (1845), 7 Ill. 91, 96.) A condition precedent is one which must be performed before a contract becomes effective or which is to be performed by the one party to an existing contract before the other party is obligated to perform. (*In re Estate of Albrecht* (1975), 27 Ill. App. 3d 839, 327 N.E.2d 317.) The requirement of lien waivers was a condition precedent. Consequently, there was no breach by Talsma which would have justified Calnan's abandonment of the job on October 23, 1974. Collins testified that all available work had been completed by Calnan on that date, but also conceded that the work covered by the second bid mistake had not been performed. As that latter portion of the work was part of the work that Calnan contracted to perform, the trial court was justified in concluding that Calnan materially breached the subcontract by walking off the job at that time.

Calnan also argues that Talsma breached the contract by failing to include in its monthly estimate to the owner the amount it deemed proper for Calnan's work for the preceding month. This argument is untenable. Even if Talsma should have submitted an estimate including Calnan's work to the owner, and thus received Calnan's money from the owner, until Calnan submitted the lien waivers to Talsma, Talsma's duty to pay Calnan did not ripen. Calnan thus cannot rely on Talsma's failure to submit estimates to the owner as excusing its abandonment of the job.

The next issue is damages. Talsma argues the trial court erred in ordering it to pay contractual damages to Calnan in light of its finding that Talsma had not breached the contract. Calnan argues the trial court correctly assessed *quantum meruit* damages against Talsma in the amount of $50,600 and that the lower court erred in assessing damages against Calnan in the sum of $20,000.

We believe the trial court erred in its determination of the measure of damages. The rights of parties to a contract are governed by its terms. (*Kohenn v. Plantation Baking Co.* (1975), 32 Ill. App. 3d 231, 336 N.E.2d 491.) The subcontract provided that if Talsma were required to complete the work which Calnan had contracted to do, then Talsma's costs would be charged against any monies due or to become due under the terms of the agreement. The cost to Talsma of completing Calnan's work includes the $271,900 which Talsma paid to the replacement subcontractor in addition to any other expenses incurred by Talsma as a result of the breach. The record is not clear as to the composition or extent of these other expenses. There is some evidence of damages of $17,763.99, exclusive of attorneys' fees. The court below found that Talsma suffered damages in the amount of $20,000. Therefore, this cause is remanded for the court to determine which of Talsma's costs were reasonably incurred in completing the work covered by the subcontract. The $277,000 which Talsma agreed to pay Calnan for the subcontract work should be deducted from the total costs incurred by Talsma.

■■ Talsma argues the trial court erred in refusing to award it attorneys' fees. Calnan argues it was within the court's discretion to do so and relies on cases which hold generally that an award or denial of fees will not be reversed absent an abuse of discretion. Calnan cites no cases in which the trial court has refused to award attorneys' fees when confronted with a contractual provision which mandates such an award. "[T]he rule in most jurisdictions * * * is that such a provision or stipulation is valid * * *." (17 Am. Jur. 2d *Contracts* §164, at 517 (1964); see *Weigley v. Matson* (1888), 125 Ill. 64, 16 N.E. 881; *Abbott v. Stone* (1898), 172 Ill. 634, 50 N.E. 328; *Keenan v. Blue* (1909), 240 Ill. 177, 88 N.E. 553.) It was error for the trial court to refuse to award attorneys' fees to Talsma, and we direct the court on remand to include Talsma's reasonable attorneys' fees in its computation of the costs incurred by Talsma.

Finally, the parties have engaged in considerable argument over whether Calnan is entitled to a *quantum meruit* award of damages for the $50,600 in work done by Calnan before abandoning the job site. The measure of damages as set forth above takes into account that figure. Talsma would have had to pay the replacement subcontractor $50,600 more (and the award in favor of Talsma would have been that much higher) had Calnan done no work at all before abandoning the project.

For the foregoing reasons the judgment of the circuit court is reversed and remanded for further proceedings in accordance with the views expressed herein.

Reversed and remanded.

LINN and ROMITI, JJ., concur.