**SHARED IMAGING, INC., Plaintiff,**

v.

**CAMPBELL CLINIC, INC., Baptist Memorial Hospital and Baptist MRI Diagnostic Imaging Center, a Tennessee Partnership with Baptist Memorial Hospital as General Partner, Defendants.**

**No. 97–2480–D/BRE.**

United States District Court,
W.D. Tennessee,
Western Division.

Feb. 10, 1998.

man, Branson & Bearman, Memphis, TN, for Shared Imaging, Inc., plaintiff.

John McQuiston, II, C. Bradford Foster, III, Evans & Petree, Memphis, TN, Aaron J. Kramer, Schiff Hardin & Waite, Chicago, IL, for Campbell Clinic Inc., defendant.

George T. Wheeler, Jr., Thomas L. McAllister, Jonathan E. Scharff, Harris Shelton Dunlap & Cobb, Memphis, TN, Roger B. Harris, Elizabeth S. McKelvey, Altheimer & Gray, Chicago, IL, for Baptist Memorial Hospital, defendant.

## ORDER GRANTING DEFENDANT CAMPBELL CLINIC'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT BAPTIST MEMORIAL HOSPITAL'S MOTION FOR SUMMARY JUDGMENT

DONALD, District Judge.

This matter is before the court on the motions of defendants Campbell Clinic, Inc. and Baptist Memorial Hospital for summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiff has filed suit alleging breach of contract as to defendant Campbell Clinic and tortious interference with contractual relations as to defendant Baptist Memorial Hospital. This court has jurisdiction pursuant to 28 U.S.C. § 1332.

### I. Facts

Late 1994, Shared Imaging ("Shared") learned that Campbell Clinic ("Campbell") was considering acquiring a Magnetic Resonance Imaging ("MRI") system. Shared is a provider of MRI systems. Shared began negotiations with Campbell and Health First whereby Shared would acquire the MRI equipment and Campbell and Health First would rent the equipment from Shared pursuant to a three-way agreement. (Am. Compl.¶ 7). On June 5, 1996 Shared and Campbell executed an Equipment Rental Agreement. (Am.Compl.¶ 8). Health First did not enter into the November 1995 three-way agreement because Health First and Campbell had not reached an agreement on certain matters. (Dep. of Raymond C. Stachowiak, p 34).

Michael Joseph Garvey, Joseph Vincent Walker, IV, J. Patrick Herald, Baker & McKenzie, Chicago, IL, Edward M. Bear-

Shared's agreement with Campbell contained a term, handwritten by Raymond C. Stachowiak[1], which provided that the contract was "subject to receipt/acceptance of [the] contract with Health First." (Signature page of the Equipment Rental Agreement, Am.Compl., Exh. A). Shared's agreement with Campbell also provided that Shared would "apply for and pay for any required permits, licenses, regulatory approvals (including Certificate of Need, hereinafter referred to as the "CON")...." (Equipment Rental Agreement ¶ 1.i., Am.Compl., Exh. A.) The CON is required by Tenn.Code. Ann. § 68–11–106(a)(4) before an entity begins to provide MRI services. Among the criteria considered before a CON is granted is whether there is a need in the area for the service. (Official Rules of Tenn. Health Facilities Commission Ch. 0720–4–.01(1), Dep. of Raymond C. Stachowiak, Exh. 21). This need is determined by comparing utilization trends and services offered by other area providers, existing services in the area and the reasonableness of the service area. *Id.* Shared engaged attorney Graham Baker to prepare and submit the CON application to the Tennessee Health Facilities Commission for approval. (Dep. of Raymond C. Stachowiak pp. 70–72) The application was submitted to the Commission on August 26, 1996. (Dep. of Raymond C. Stachowiak, Exh. 25.)

A hearing on the CON application was scheduled for November 14, 1996. According to Stachowiak, John M. Vines[2] spoke with Baker and Stachowiak on the morning of November 14th about a conversation that Vines had the night before with Gregory M. Duckett[3]. Duckett informed Vines that Baptist intended to challenge Campbell's CON application. Specifically, Duckett allegedly represented that if Campbell did not withdraw its application, Baptist would enforce the non-compete agreements between Baptist and its radiologists and prevent them from reading the scans generated by Campbell's MRI. (Am.Compl. ¶ 13.) Duckett averred that Baptist would not allow Campbell's MRI to be considered a preferred provider in the Baptist health care plan. *Id.* Baptist is a fifty percent owner of the facility in which Campbell intended to install the MRI system. *Id.* As part owner of the facility, Baptist represented that it would attempt to prevent the installation of the MRI system. (Dep. of Raymond C. Stachowiak, pp. 81–85). Vines indicated that Campbell wanted to defer the hearing until Campbell and Baptist could reach a resolution. *Id.*

On December 1, 1996, Campbell entered into an MRI Services Agreement with Baptist MRI Diagnostic Imaging Center. Stachowiak, in a letter dated December 13, 1996, offered Campbell modifications to their agreement in an effort to salvage the relationship. (Dep. of Raymond C. Stachowiak, Exh. 28). These modifications were also subject to Health First's participation. *Id.* Vines responded on December 20, 1996 that the CON application contained usage and billing assumptions with which Campbell disagreed. (Dep. of Raymond C. Stachowiak, Exh. 29.) Because the CON application numbers were, in his opinion, misleading, Vines did not wish to go forward with the application. *Id.* Further, because Health First had not executed an agreement with Shared, Vines relied on the "subject to" language added to the June 5th agreement to release Campbell from the agreement. (Dep. of Raymond C. Stachowiak, Exh. 30.) Shared indicated in its September 23, 1996 letter to Campbell that Shared was releasing the Health First contingency. (Dep. of Raymond C. Stachowiak, Exh. 18.) Campbell considered the September 23, 1996 letter to be an amendment which was ineffective because Campbell had not given written concurrence. (Dep. of Raymond C. Stachowiak, Exh. 29.)

Shared made a formal demand for adequate written assurance of Campbell's performance under the agreement on January 29, 1997. During March 1997, Vines and Baker exchanged correspondence regarding

---

**1.** President of Shared Imaging, Inc. (Am. Compl. ¶ 14).

**2.** Chief Executive Officer of Campbell Clinic, Inc. (Aff. Of John M. Vines ¶ 1.)

**3.** Senior Vice President and Corporate Counsel of Baptist Memorial Hospital ("Baptist") (Aff. Of Gregory M. Duckett ¶ 1.)

the need and impact of modifying the CON application figures to reflect what Campbell considered to be more accurate numbers. (Dep. of Raymond C. Stachowiak, Exh. 32–34.) Baker opined that the changes that Vines requested would be so substantial as to require that the application be withdrawn. (Dep. of Raymond C. Stachowiak, Exh. 33.) The CON application was withdrawn on March 12, 1997. (Dep. of Raymond C. Stachowiak, Exh. 35.)

Shared filed its complaint in the Northern District of Illinois on February 24, 1997. The case was transferred to the Western District of Tennessee on May 28, 1997. Campbell filed its motion for summary judgment on November 19, 1997 and Baptist filed its motion for summary judgment on December 2, 1997.

## II. Summary Judgment Standard

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *In re Estate of Hoover,* 155 Ill.2d 402, 185 Ill.Dec. 866, 615 N.E.2d 736, 739 (1993). The evidence and inferences based on facts must be viewed in a light most favorable to the nonmoving party. *Kochins v. Linden–Alimak, Inc.* 799 F.2d 1128, 1133 (6th Cir.1986).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once a properly supported motion for summary judgment is made, the nonmovant "may not rest upon the mere allegations or denials of [its] pleadings," Fed.R.Civ.P. 56(e), but must—by affidavits or other evidence—"come forward with some probative evidence in support of its claim and make it necessary to resolve the differences at trial." *Boyd v. Ford Motor Co.,* 948 F.2d 283, 285 (6th Cir. 1991), *cert. denied,* 503 U.S. 939, 112 S.Ct. 1481, 117 L.Ed.2d 624 (1992). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. Analysis

### 1. Choice of Law

Under the Erie doctrine, the federal court in a diversity action will apply the law of the state in which it sits including that state's choice of law rule. *MacPherson v. MacPherson,* 377 F.Supp. 794, 796 (M.D.Tenn.1973), rev'd on other grounds, 496 F.2d 258 (6th Cir.1974). The Tennessee rule is that, subject to the qualification that a contrary intent will control, the law of the place of the making of the contract will prevail. *International Harvester Credit Corp. v. Hill,* 496 F.Supp. 329, 332 (M.D.Tenn. 1979). "(A) contract is presumed to be made with reference to the law of the place where it was entered into unless it appears that it was entered into in good faith with reference to the law of some other state." *First American National Bank v. Automobile Insurance Co.,* 252 F.2d 62, 64 (6th Cir.1958). Because the parties to the subject contract agreed that the contract would be governed by Illinois law, all further analysis and discussion will apply the relevant law from that jurisdiction.

### 2. Campbell Clinic's Motion for Summary Judgment

Campbell, in its motion for summary judgment denies the formation of a contract due to the failure to meet a condition precedent and thus contends that it could not commit a breach. Specifically, Campbell argues that to have performed under the conditions as they existed would have been unlawful because Campbell could not operate a MRI system without the CON, and that the contract was void for lack of mutuality.

The Restatement of the Law of Contracts Second defines a condition as "an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." Restatement (Second) of Contracts § 224

(1979). The drafters of the Restatement opine that it is better to view the contract already in existence and that any conditions are conditions on performance. Restatement (Second) of Contracts § 224, Reporter's Note (1979). In contrast to the Restatement, Illinois courts recognize conditions precedent as conditions to both formation and performance. Under Illinois law, a condition precedent is an act that must be performed or event that must occur before a contract becomes valid. *Hardin, Rodriguez & Boivin Anesthesiologists, Ltd. v. Paradigm Ins. Co.*, 962 F.2d 628, 633 (7th Cir.1992). The failure to perform a condition precedent may be construed as a breach of contract. *Id.* The satisfaction of a condition is generally subject to the rule of strict compliance. (E. Farnsworth, Farnsworth, on Contracts § 8.3, at 571 (1990).) Williston wrote, " '[s]ince an express condition ... depends for its validity on the manifested intention of the parties, it has the same sanctity as the promise itself. Though the court may regret the harshness of such a condition, as it may regret the harshness of a promise, it must, nevertheless, generally enforce the will of the parties....' " (E. Farnsworth, Farnsworth on Contracts § 8.3, at 571 (1990), quoting 5 S. Williston, Contracts § 669 (3d ed.1961).) Both parties must agree to the condition before it binds the parties. *Id.* The handwritten term inserted by Stachowiak provided that the contract was "subject to receipt/acceptance of [the] contract with Health First."

> "Subject to" may have more than one meaning depending on the circumstances of its use; however, when used in connection with contracts, these words usually indicate a condition on a party's duty of performance and suggest that mere negotiation is contemplated by the parties. In 17 Am.Jur.2d, Contracts § 320 at 749 (1964), it is stated that: "A proviso in a contract creates a condition, in the absence of anything in the contract to show that such was not the intention of the parties, and the employment of such words as

> "when," "after," "as soon as," or "subject to" usually indicates that a promise is not to be performed except upon a condition...."

*Interway, Inc. v. Alagna,* 85 Ill.App.3d 1094, 41 Ill.Dec. 117, 407 N.E.2d 615, 619 (1980).

 Shared argues that by its September 23, 1996 letter to Campbell it waived the condition and that Campbell cannot rely on Shared's inability to execute a contract with Health First as a reason to excuse Campbell's performance under the contract. Parties to a contract may waive contractual rights and/or provisions intended for their benefit. *Batterman v. Consumers Illinois Water Co.,* 261 Ill.App.3d 319, 199 Ill.Dec. 881, 634 N.E.2d 1235, 1236 (1994). Shared construed the handwritten term to be a unilaterally waivable condition under the theory that it only ran to Shared's benefit. The requirement of a contract with Health First, however, benefits both parties. Shared needed 100 scans per month to justify the placement of the equipment. Campbell was only able to commit to 65 scans per month. The 35 scans per month that Health First could potentially generate would help Shared justify the placement and help Campbell obtain a system without having to commit to so many scans. "The rule is well established, that where one has the precedent condition in his favor, that he is not liable to an action until the other has performed." *Calnan v. Talsma Builders, Inc.,* 77 Ill.App.3d 221, 32 Ill.Dec. 695, 395 N.E.2d 1076, 1080 (1979). Shared was the party that was to perform the condition and secure an agreement with Health First. It defies logic for Shared to be both the obligor and the beneficiary of this condition.

 Campbell views the September 23, 1996 letter from Shared as a modification to the contract which to be effective must be agreed to by both parties [4]. The Equipment Rental Agreement is governed by the Illinois adoption of the Uniform Commercial Code, Article 2A. This article covers any transac-

---

4. 11. Binding Agreement
 a. ...

b. This AGREEMENT may be altered or amended only by signed written agreement between the parties.
Complaint, Exh. A.

tion that creates a lease [5]. 810 Ill.Comp.Stat. Ann. 5/2A–102 (West 1993). The handwritten term is a part of the contract that the parties agreed to on June 5, 1996. Any modifications to that contract are subject to the clause in the contract governing modifications. "A signed lease agreement that excludes modification or rescission except by a signed writing may not be otherwise modified or rescinded ..." 810 Ill.Comp.Stat.Ann. 5/2A–208(2) (West 1993). "Although an attempt at modification .. does not satisfy the requirements of subsection (2), it may operate as a waiver." 810 Ill.Comp.Stat.Ann. 5/2A–208(3) (West 1993). The party asserting waiver must prove not only the existence of an oral modification (or other modification that does not comply with the contract's terms) but must also prove that it relied on the alleged waiver. *Central Illinois Public Service Co. v. Atlas Minerals, Inc.*, 965 F.Supp. 1162, 1172 (C.D.Ill.1997). The rule requiring reliance to prove a waiver by an attempt at modification prevents one party to a contract from using self-serving testimony to prove that the other party waived a right under the contract. *Cole Taylor Bank v. Truck Insurance Exchange*, 51 F.3d 736, 739 (7th Cir.1995). There is no indication in the record that Shared ceased to pursue the agreement with Health First in reliance on the purported modification of the agreement. Without reliance, Shared has not proved that there was a waiver of the term. Without a waiver, the modification would have to be in writing in order to be effective as required by the contract. Because the September 23, 1996 modification was not agreed to in writing by both parties, it is not effective to modify the contract.

■ When parties enter a contract that is conditioned upon the happening or non-happening of an event, and the condition fails, generally the contract has no further effect. *Cummings v. Beaton & Asso. Inc.*, 249 Ill. App.3d 287, 187 Ill.Dec. 701, 712, 618 N.E.2d 292, 303 (1992). Stachowiak admits that an agreement was never reached with Health First. *See* Dep. of Raymond C. Stachowiak,

p 51, II 18–22. The attempted modification of the agreement which would have waived the condition precedent was ineffective to relieve Shared of its obligation to secure an agreement with Health First because Campbell did not agree to the modification in writing. Because the condition precedent for the contract was not met the contract has no further effect and Campbell is not in breach of the contract. It is not necessary for the court to reach the issues of mutuality or unlawful performance.

### 3. Baptist's Motion for Summary Judgment

■ Illinois courts have recognized the importance of contractual relations and a need to provide protection to parties who enter into contracts from third parties who would seek to disrupt the relationship for almost one-hundred years. "Every man has a right, under the law, as between himself and others, to full freedom in disposing of his own labor or capital according to his own will, and any one who invades that right without lawful cause or justification commits a legal wrong; and, if followed by an injury caused in consequence thereof, the one whose right is thus invaded has a legal ground of action for such wrong." *Doremus v. Hennessy*, 176 Ill. 608, 52 N.E. 924, 925 (1898). The sacrosanct contractual relation takes precedence over the conflicting rights of any presumptive interferor, including his right to compete and his own prospective advantage. Prosser, Torts § 129 at 945 (4th ed.1971). The elements of tortious interference with contractual relations are (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages. *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill.2d 145, 137 Ill.Dec. 19, 545 N.E.2d 672, 681 (1989).

---

**5.** "Lease" means a transfer of the right to possession and use of goods for a term in return for consideration....

810 Ill.Comp.Stat.Ann. 5/2A–103(j) (West 1993).

Shared alleges in its amended complaint that Baptist took two actions which constitute tortious interference with Shared's contractual relationship with Campbell:

 a. Advised Campbell that certain negative consequences for Campbell would flow from Campbell's decision to proceed with the CON application process and Campbell's performance of its obligations under the Equipment Rental Agreement; (Am.Compl.¶ 24)

 b. Made a proposal to Campbell whereby Campbell might realize better financial results by referring its patients requiring MRI services to Baptist as opposed to those that Campbell expected to realize by providing its own MRI services pursuant to the Equipment Rental Agreement. (Am.Compl.¶ 24)

The first of these actions occurred during the November 13, 1996 conversation between Duckett and Vines. The second occurred, at the latest, on December 1, 1996 when Baptist MRI Diagnostic Imaging Center and Campbell entered into a contract for MRI services. Because the condition precedent to enter into an agreement with Health First had not been performed at the time of the alleged acts of interference, there was not a valid contract in place between Shared and Campbell. *Hardin* at 633.

The second requirement of the cause of action is that Baptist be aware of the contractual relationship between Shared and Campbell. Shared infers that Baptist was aware of the contract from the fact that the CON application was a matter of public record and the agreement between Shared and Campbell was a part of the application package. Dep. of Raymond C. Stachowiak p 152.

The third, fourth and fifth elements are that Baptist intentionally and unjustly induced Campbell to breach its contract with Shared, a subsequent breach of the contract by Campbell that was caused by Baptist's actions and that Shared suffered damages as a result of the breach. As discussed in the analysis of Campbell's motion for summary judgment, there was no breach of contract by Campbell therefore, these elements have not been met.

 If a plaintiff fails to establish an element of the cause of action, then summary judgment for the defendant is proper. *Espinoza v. Elgin, Joliet and Eastern R.R. Co.,* 165 Ill.2d 107, 208 Ill.Dec. 662, 649 N.E.2d 1323, 1326 (1995). Here, Shared has failed to establish that there was a valid contract and that there was a breach caused by Baptist's actions. Thus, there is no genuine issue as to any material fact and as such, summary judgment in favor of Baptist is appropriate.

## IV. Order

Based on the foregoing, Defendant Campbell Clinic's motion for summary judgment is **GRANTED.** Defendant Baptist Memorial Hospital's motion for summary judgment is **GRANTED.**